## HENRY O'GORMAN vs. FREDERICK RICHTER.

### July 11, 1883.

**Elections—Notice of Contest.**—*Held*, that the notice of contest in the case was sufficient to warrant a recount of the ballots by the district court, if preceded by the proper preliminary evidence.

**Same—Grounds for a Recount.**—Also, whether a court, on the trial of a contested election case, is bound to make a recount of the ballots unless there be some evidence first produced furnishing grounds for supposing that a miscount might have been made by the judges of election, *quære*. But evidence showing that the judges did not count the ballots, as required by law, by reading and announcing each ballot by itself, but divided them into parcels or lots of 10 or 20, and then read and announced them in the aggregate as so many votes for each candidate whose name was supposed to be upon all the ballots, rendered it sufficiently probable that the canvass was unreliable, and that mistakes might have been made, to justify the court in ordering a recount, provided the genuineness of the ballots were first sufficiently proved.

**Same—Statutory Requirements as to Enveloping and Sealing Ballots.** The provisions of Gen. St. 1878, c. 1, § 88, requiring the judges of election, after completing the canvass, to envelop and seal up the ballots, are merely directory; and if it be clearly and satisfactorily proved that they have been kept intact and inviolate in the same condition as when counted, the ballots are admissible in evidence, although not enveloped and sealed up in the manner required by statute.

**Same—Evidence of Genuineness of Ballots.**—The evidence in this case considered, and *held* that the genuineness of the ballots was sufficiently established to justify the district court, within the rule laid down in *Newton* v. *Newell*, 26 Minn. 529, in receiving them in evidence.

Election contest. Appeal by the incumbent, Richter, from a judgment of the district court for Ramsey county, (where the contest was tried by *Brill* and *Simons*, JJ.,) declaring O'Gorman, the contestant, to have been duly elected sheriff of that county at an election held on November 7, 1882, and to be entitled to the office. The case is stated in the opinion.

*O'Brien & Wilson, Gordon E. Cole,* and *I. V. D. Heard,* for appellant.

It was error for the court below to make a general canvass of the ballots before cause was shown. There was no evidence of fraud or mistake to warrant a recanvass. McCrary on Elections, § 280; Brightly's Lead. Cas. on Elections, 360; *Kneass's Case,* 2 Parsons, (Pa.) 599; *Thompson* v. *Ewing,* 1 Brewster, 67; *People* v. *Livingston,* 79 N. Y. 279, 293.

The ballots offered in evidence were not enveloped, sealed and directed as required by law, and should have been rejected. If it is said that such ballots were admissible in evidence at common law, the answer is that no such ballots would have been preserved were it not for the statute, and the common law would not permit in evidence ballots erased and interlined as these were, without explanation of such interlineations and erasures.

*H. J. Horn* and *James B. Beals,* for respondent.

The statutory provisions as to stringing, enveloping and sealing are intended to preserve evidence for a contest, and to facilitate the proof of identity. Gen. St. 1878, c. 1, §§ 18, 88, 89; *Newton* v. *Newell,* 26 Minn. 529; *People* v. *Vail,* 20 Wend. 12; *Com.* v. *Commissioners,* 5 Rawle, 75. These provisions are to be construed as directory, and their omission will not be allowed to prejudice the merits of an election. *Taylor* v. *Taylor,* 10 Minn. 81, (107;) *People* v. *Holden,* 28 Cal. 123; *People* v. *Sackett,* 14 Mich. 320; *People* v. *Cicott,* 16 Mich. 283; *People* v. *McManus,* 34 Barb. 620; *People* v. *Livingston,* 79 N. Y. 279; *Kneass's Case,* 2 Parsons, (Pa.) 599.

MITCHELL, J. This is a contest for the office of sheriff of Ramsey county. The board of canvassers declared the result of the precinct returns as follows: For O'Gorman, 4,158; for Richter, 4,187,—giving a majority of 29 to Richter, to whom a certificate of election was issued. O'Gorman having appealed to the district court, pursuant to Gen. St. 1878, c. 1, § 32, he was declared elected and entitled to the office. This conclusion was based upon an actual count, in court, of all the ballots in the ballot-boxes, with the following result: For O'Gorman, 4,189; for Richter, 4,101. Majority for O'Gorman, 88. The only question in the case is the propriety of the action of the court in ordering a recount and admitting these ballots in evidence. To this action the appellant raises three objections:

1. That it was not warranted by the notice of contest. We think this objection is not well taken. Section 52 of the chapter referred to provides that the contestant shall serve upon the opposite party "a notice specifying the points on which the election will be contested." Among the points specified in the notice in this case are—*First*, that in canvassing the votes, the judges of election in all the precincts did not read and announce each .ballot for sheriff separately, and proclaim the same to the clerks, but in several precincts failed so to do, and on several different occasions, and at divers times, announced a large number of votes together and in the aggregate, but exactly in what precincts and to what extent this was done the contestant cannot set forth with more particularity, but that he believes and charges that if said errors and mistakes were duly corrected, it would appear that he was duly elected; *second*, that in each of the precincts, ballots.on which the name of Richter did not appear were announced, counted, and returned as votes for Richter; *third*, that in each of the precincts, votes were duly cast for the contestant which were not counted or returned for him. We think that, under the circumstances, this was sufficiently specific to warrant a recount, if preceded by the proper preliminary evidence.

Appellant contends that, under section 89, the contestant should have had the ballots opened and recounted before he began his contest, so that he could have specified in his notice minutely and in detail in what particular precincts the miscount occurred.

Section 88 provides for the careful sealing up and preservation of the ballots for six months, and then for their destruction, without the packages being opened: provided, if any contest of election shall be pending in which the ballots may be required as evidence, they shall not be destroyed until such contest is finally determined. Then follows section 89: "In all cases of contested elections the parties contesting the same shall have the right to have the said package of ballots opened, and said ballots referred to by witnesses, for the purpose of such contest." It seems very doubtful to us whether this gives a right to have the ballots opened to any one except a person who has already instituted a contest,—the first step in which is the service of notice. To give any and every body this right, before any contest was actually instituted, would, to say the least of it, be a questionable practice. The language of the statute presupposes a contest already instituted, and its object seems to be to give such contestant the right to have the ballots inspected, not for the purpose of framing his notice, but to enable him to prepare his case for trial, —a provision somewhat analogous to that of Gen. St. 1878, c. 73, § 88, which gives a party to a civil action the right to inspect books and papers containing evidence relating to the merits of the action.

2. The second objection is that this canvass of the ballots should not have been allowed, unless cause therefor was shown by the introduction of some evidence of miscounts by the judges of election, through fraud or mistake. It may admit of doubt whether a court is bound to open the ballot-boxes and make a recount, unless there be some evidence furnishing ground for supposing that a miscount might have been made by the judges. If a party can demand a count by the court without any such showing, it could often be resorted to as a mere fishing expedition. But even if this be so, we think that as to all the precincts, except the country precincts and two of the city precincts—the second in Fourth ward and the First in Sixth ward—there was evidence tending to show that the votes had not been counted as required by law, and therefore that there was a probability that errors might have been committed. It was proved that the judges did not read off each ballot by itself, but divided the "straight" tickets into lots of 10 or more, and then announced them

in the aggregate as so many votes for each candidate. It may be, as suggested in the argument, that this is the only practical way to do without consuming an inconveniently long time in the canvass; but it is certainly not in accordance with the requirements of the statute. Gen. St. 1878, c. 1, § 86. It is very liable to result in mistakes, for it is a notorious fact that frequently "split" tickets are printed and circulated in close imitation of the straight tickets, and identical with them, except that the name of an opposition candidate for some office is printed on them in place of the regular nominee on the straight ticket. This fact is very liable to escape the notice of the judges of election, unless they read each name on each ticket separately. The mode of counting resorted to in this case was good ground for supposing that mistakes might have occurred, and that the original count was unreliable. It furnished sufficient evidence (if any were necessary) to warrant a recount. In the case of the country precincts and the two city precincts in which the vote was counted according to the statute, the recount by the court and the returns of the judges almost exactly agreed, there being a change of only three votes (and that in favor of Richter, adding six to his majority) in an aggregate of nearly sixteen hundred ballots.

3. The third and principal question is whether the ballots were so preserved and kept inviolate, after the canvass by the judges of election, as to entitle them to be received in evidence. As no point is made as to the country precincts, we need only consider the ballots from the precincts of the city of St. Paul. These ballots were not enveloped and sealed, as required by section 88 of the chapter on elections, and, for this reason alone, appellant claims that they were not admissible. But we are of opinion that the provisions of this section are merely directory, and that where it is clearly and satisfactorily proved that the ballots have been kept intact and inviolate, in the same condition as when counted by the judges of election, they are admissible in evidence, although not sealed up in envelopes as required by the statute. The statute does not make the ballots evidence. They are common-law evidence, and, when properly preserved and identified, they furnish the best evidence of the will of the electors. The statute treats of them as an existing form of evidence, and

gives certain directions for the more careful preservation of them. Neither does the statute assume to declare that the ballots shall not be admissible if not preserved as the statute directs. The preservation of the ballots being the only and ultimate object of the statute, if that fact is accomplished, the object is accomplished, and the omission to observe all the formalities provided by the law will not be fatal to the competency of the evidence; the point of inquiry always being the will of the electors as manifested by their ballots. To exclude such evidence merely on account of an omission to comply with these statutory provisions, would put it in the power of any ignorant, careless, or corrupt judge of election to frustrate an investigation into any election. Therefore, the general tendency of all courts is to hold all such provisions as directory only. *People* v. *Livingston*, 79 N. Y. 279; Cooley on Const. Lim. 617, 618; *People* v. *Higgins*, 3 Mich. 233.

It is incumbent, however, upon the party offering the evidence to show clearly, and to the satisfaction of the court, that the ballots have been preserved intact, before they can be admitted. In *Newton* v. *Newell*, 26 Minn. 529, this court held that it must affirmatively appear that they have been carefully preserved; that they must have been so carefully preserved as to place their identity beyond any reasonable doubt. We have no desire to modify this rule, believing that it is founded on the best of reasons. The returns of the judges of election are made immediately after canvassing the votes, and the votes are canvassed immediately after the close of the polls, in public, and usually in the presence of friends of both parties, and the result publicly announced. True, these returns may be erroneous, either through fraud or mistake, and may, for that reason, be impeached; but, as has been said, "in attempting to remedy one evil, we should be cautious not to open the door for a greater one." After the result of an election is announced, it is known just how many votes are required to change it. The ballots have no marks by which they can be identified; hence, if the ballots are to be resorted to as evidence, it is of the utmost importance that they be kept secure. If they have been preserved intact, they are the highest and best kind of evidence; if not, they are the most unreliable and dangerous.

Hence the burden is upon the party offering them to prove their genuineness. But this does not require that they must be proved genuine beyond all possible doubt, or beyond a *mere possibility* that they *might* have been interfered with. This would be practically to exclude them entirely under any circumstances. All that is required is that they be proved intact and genuine, with a reasonable degree of certainty, and to the full satisfaction of the court. The able and learned court who tried this case had before them the rule laid down by this court in *Newton* v. *Newell, supra,* and doubtless acted upon it. They were satisfied of the genuineness of these ballots beyond a reasonable doubt, and have admitted them; and in doing so, we think, they were fully justified by the evidence. Certainly, we, acting as an appellate court, cannot say they erred.

It would be impossible here to review the evidence on this point, consisting as it does of several hundred folios. An attempt to do so would necessarily be partial and imperfect, and would, therefore, rather tend to mislead than to aid in other cases. It is sufficient to say that it appears that, after the judges of election canvassed the votes, they strung the ballots on thread or twine, and placed them in the box, sealed the slit in the box through which the ballots were deposited, locked the box, and put it and the key in the custody of one or more of the judges, in whose custody it remained until delivered at the office of the city clerk; that the boxes and keys were delivered to the city clerk or his deputy in person, except in the case of one box, which was left in the city hall, with the city jailer, at a late hour of the same day on which the election was held, and two or three boxes left with him the next morning before the city clerk's office was opened, and in these cases the testimony of the jailer is satisfactory to the effect that he delivered the boxes intact to the city clerk in the morning; that the boxes and keys were delivered at the office of the city clerk by the judges of election in person, except in one instance, where the judge drove with it to the door of the city hall and sent his brother into the office with it, under circumstances which almost exclude the possibility of its being tampered with during the very few minutes it could have been in his possession. Every box was delivered to the city clerk before 2 or 3 o'clock of the afternoon of the day

succeeding the election, except one, which was not delivered until the morning of the following day, (Thursday,) but the custody and whereabouts of this one during the interval is also satisfactorily explained. As early as Thursday, at least, all the boxes were sealed up by the city clerk and placed in the vault of the city comptroller, where they remained intact until opened in court. During the short time—about one day—when they were in the city clerk's office, before he sealed them up and deposited them in the vault, their situation, condition, and the manner in which they were kept, seem to us to exclude any reasonable probability that any one tampered with these boxes, especially when it is considered that, if interfered with at all, not one, but a number of boxes, must have been tampered with in order to make this change in the result. In addition to this, the fact that the ballots were all on strings would render it very difficult to change them to any extent without leaving some traces of it that would have been detected when the boxes were opened in court. Moreover, we fail to discover any suspicious circumstance, either in the manner of preserving the ballots or their custody, tending to raise a question as to their being intact. Neither did the appellant produce any testimony to rebut this evidence of their genuineness, or tending to show that they had been interfered with. We are of opinion that if a jury had found a defendant guilty of a crime upon the same weight of evidence of guilt that was here produced in favor of the genuineness of these ballots, no court, certainly not an appellate court, would feel warranted in setting aside the verdict. This, to say the least of it, is certainly as strict a test as any one would claim should be applied to the present case.

The only instances in which what we have said as to the evidence might not fully apply, are those of the boxes from the second precinct in the Second ward, and the second precinct in the Third ward. In the first, Lynch, the judge with whom the box was left during the night after the election, was not called as a witness; in the last, the box was left over night, locked, but not sealed, in the unoccupied room in which the election had been held. By the recount in the former Richter loses eleven votes and O'Gorman gains seven; and in the latter Richter gains two votes and O'Gorman loses three. Hence,

even if the recount as to these two precincts be rejected, and the returns of the judges of election retained, the result would not be affected.

Judgment affirmed.