# C. O. MOON v. J. O. HARRIS.[1]

June 13, 1913.

Nos. 18,186—(32).

**Election — notice of appeal.**

1. A notice of appeal in an election contest for the office of register of deeds which states that the ballots cast for the contestant were erroneously counted and returned for the contestee in all of the precincts of the county, and that, if correctly counted and returned, they would have given contestant a plurality, sufficiently specifies "the points upon which the contest will be made" within R. L. 1905, § 336, amended by Laws 1911, p. 78, c. 59.

**Same — amendment.**

2. The statute cited authorizes an amendment of the notice of appeal. There was no error in permitting the notice to be amended so as to charge that there were errors unfavorable to contestant in all the precincts except two, though such amendment was unnecessary, the official returns of the two precincts being presumptively correct though alleged to be erroneously counted and returned unfavorably to the contestant.

**Reliance on official count.**

3. In the 65 precincts of the county which were recounted the contestee was given by the recount a majority of 15 against a majority of 23 upon the official returns. In the two precincts, not recounted, the contestant relied upon the official returns which gave him a majority of 18. The court found the contestant elected by a majority of 3. It is *held* .that the contestant properly relied upon the official returns of the precincts not counted, and the recount of the precincts recounted, and was not required to make a recount of all the precincts in the county or of more than sufficient to give, with the official returns, a result in his favor; and, if the ballots and returns were kept with sufficient integrity to permit their use in evidence, the court was correct in its finding.

[1] Reported in 142 N. W. 12.

**Ballots and returns as evidence.**

4. Whether the ballots and returns are so kept as to justify their use in evidence for the purpose of overturning the official canvass is a question of fact for the trial court; and upon an examination of the evidence it is *held* that the trial court properly received the ballots and returns in evidence.

**Auditor not estopped from contesting count.**

5. The trial court was justified in holding that the contestant, who, as deputy auditor, had access to and was substantially in charge of the ballots, was not precluded because thereof from taking advantage of errors in the count.

C. O. Moon, contestant, appealed to the district court for Beltrami county from the decision of the county canvassing board declaring J. O. Harris duly elected at the November, 1912, election to the office of register of deeds in that county by a plurality of five votes. The contestee, Harris, appeared specially and objected to further proceedings in the contest on the ground that the court had no jurisdiction of the contest. The appeal was heard before Stanton, J., who made findings of fact and ordered judgment in favor of contestant Moon. Contestee's motion for amended findings and conclusions was denied. From the order denying contestee's motion for a new trial, he appealed. Affirmed.

*E. E. McDonald* and *P. J. Russell,* for appellant.

*A. M. Crowell* and *C. C. MacCarthy,* for respondent.

DIBELL, C.

At the November, 1912, general election the contestant, C. O. Moon, and the contestee, J. O. Harris, were rival candidates for the office of register of deeds of Beltrami county. The contestee, Harris, was declared elected by the county canvassing board by a majority of five. The contestant, Moon, appealed to the district court. Upon trial had he was declared elected by a majority of three. The contestee appeals from the order denying his motion for a new trial.

1. The contestee attacks the sufficiency of the notice of appeal.

Section 336, R. L. 1905, as amended by Laws 1911, p. 78, c. 59, requires the notice of appeal to the district court in an election contest to specify "the points upon which the contest will be made."

The notice of appeal stated that the contestant received a plurality of the votes cast for the office of register of deeds; that the ballots cast for the contestant were erroneously counted for the contestee in all of the precincts of the county and were erroneously returned to the county auditor as cast for the contestee; and that the ballots thus erroneously counted and returned, if correctly counted and returned, would have given a result in contestant's favor.

These specifications, though shabbily framed, were sufficient to apprise the contestee of the claim made, and justified the court in ordering an inspection of the ballots. This court has never been averse to the allowance of a fair opportunity of ascertaining the actual result of an election. The important thing is that the truth be ascertained and the will of the voters be given effect; and the notice of appeal is intended as an aid, not a hindrance, to a fair investigation. We have not overlooked such cases as O'Gorman v. Richter, 31 Minn. 25, 16 N. W. 416; Soper v. County of Sibley, 46 Minn. 274, 48 N. W. 1112, and Lee v. Kratka, 94 Minn. 524, 102 N. W. 1134.

2. The contestee claims error in the allowance of an amendment of the notice of appeal. The contestant was allowed, over the objection of the contestee, to amend his notice of appeal by alleging that the ballots were erroneously counted and returned in all the precincts except in the precinct of Frohn and the precinct of Grant Valley; the attack on the returns of these two precincts being thus withdrawn. The statute which provides for the notice of appeal permits its amendment.

The amendment was offered and allowed after it was shown that the ballots of these two precincts could not be found. There was no error in allowing the amendment. It was an unnecessary one. The returns of the precinct officers were prima facie evidence of the ballots cast, and the contestant, though he alleged errors in these two precincts making against himself, and in favor of the contestee, necessarily accepted the official returns, unless he or the contestee offered proof showing errors. An allegation by the contestant that there were errors unfavorable to him in the count, without proof, did not change

the probative effect of the returns, and still less was it an admission of errors against the contestee in the returns.

3. The contestee claims that the court was in error in finding that the contestant received a plurality of the votes cast.

. There were 67 voting precincts in the county at the 1912 election. A recount of all the precincts except Frohn and Grant Valley was had. According to the finding of the county canvassing board, based of course upon precinct returns, Moon received 1,458 votes and Harris 1,463, a majority of 5 for Harris. Omitting the precinct returns for Frohn and Grant Valley, where Moon was given 52 votes and Harris 34, a majority of 18 for Moon, the official returns gave Moon 1406 and Harris 1429, a majority of 23 for Harris. Upon a recount of all of the ballots, except in the precincts of Frohn and Grant Valley, where the ballots were missing, it was found that Moon had 1,411 votes and Harris 1,426, a majority of 15 for Harris.

If the official returns from Frohn and Grant Valley are added to the result of the recount, Moon received 1,463 votes and Harris 1,460, a majority of 3 for Moon. The court added the result of the recount of the 65 precincts to the official returns of the two precincts and found Moon elected by a plurality of three. If the returns and the result of the recount could be thus used Moon was elected; if they could not be, Harris was elected.

The official returns are evidence of the votes cast. The presumption is that they correctly state the result of an accurate count of the ballots. The testimony of the precinct officers tended to show that the precinct returns were correctly made and were at the time of the trial in the condition when made. This evidence was offered to repel the attack made upon their integrity, because of the careless method of their keeping after their return to the county auditor. The contestant, however, necessarily relied upon the legal presumption of their accuracy. There is no presumption that a recount would show a gain or loss either for Moon or for Harris. The presumption is to the contrary. To make a successful contest it was necessary for Moon, by a recount of the ballots, to change the result declared by the canvassing board to a result in his favor. It was not necessary to recount every precinct of the county. It was necessary

that he go far enough to show errors in the returns of certain precincts, which, when corrected and added to the presumptively correct official returns, gave him a plurality. And so when by a recount of the 65 precincts he reduced Harris' vote by 3, and increased his vote by 5, thus reducing the plurality of Harris on the recount precincts to 15, and used the official returns of Grant Valley and Frohn, where he had a plurality of 18, he was elected by a plurality of three.

This result was reached by the trial court, and correctly, unless such suspicion attached to the keeping of the ballots and returns as required their exclusion, and this is a claim made by the contestee.

4. The contestee claims that the ballots and returns were so carelessly kept, and with so much opportunity of being tampered with, that they should not be received in evidence to overturn the finding of the county canvassing board.

The court found that the blue envelopes, containing the county ballots of the precincts of Frohn and Grant Valley, "were surreptitiously removed from the county auditor's vault by some person whose identity the evidence does not disclose." They disappeared during the progress of the recount.

There were a number of irregularities in the keeping of the ballots, in the way of stringing them, and in sealing them, and in returning them to the county auditor, and in keeping them after they were returned. Some seals were missing from the envelopes or were broken or were mutilated. The court specifically found that "the ballots were, when recounted by the inspectors, and when received in evidence herein, in the same condition as when counted by the judges of election." It was specifically found that the votes cast in the precincts of Frohn and Grant Valley were as shown in the official returns. Upon the recount few errors were found. In only 12 of the 65 precincts recounted were errors discovered. In Tenstrike there was an error of 5 due to a mistake in the tally sheet. In none of the other precincts was there an error greater than a gain or loss of one for either candidate. The difference between the total vote shown by the returns and upon the recount was only two. In referring to the ballots the trial court, in its memorandum, said:

"I am fully satisfied that they are intact and genuine, and that

they are the identical ballots cast by the voters and are now in the same condition in every respect as when voted. This conclusion is based upon all of the testimony of the case, including that of two of the inspectors, as well as upon my own careful inspection of the envelopes and ballots."

The books are replete with cases stating, in one form or another, that the ballots are the primary or the best evidence in a contest of an election; but that to overcome the result of an official canvass by a resort to the ballots it must be shown that they are intact and genuine and have not been tampered with. Newton v. Newell, 26 Minn. 529, 6 N. W. 346; Stemper v. Higgins, 38 Minn. 222, 37 N. W. 95; Caldwell v. Mc Elvain, 184 Ill. 552, 56 N. E. 1012; Hartman v. Young, 17 Ore. 150, 20 Pac. 17, 2 L.R.A. 596, 11 Am. St. 787; Albert v. Twohig, 35 Neb. 563, 53 N. W. 582.

The question whether the ballots have been so preserved that they may be safely used to defeat the result shown by the returns is a question of fact, the decision of which is with the trial court. The court found that the ballots and the returns, when offered in evidence, were in their original condition. It was in a better position than we can be for making a correct finding; and we hold that it was properly made.

5. Allied to the question just discussed is the contestant's claim that Moon, because he had access to the ballots, and an opportunity to tamper with them, should not be permitted to make use of them in overturning the finding of the county canvassing board.

Moon was a deputy auditor. He was substantially in custody of the ballots as they were returned from the precincts. He, more than the auditor, seems to have had to do with them. Propriety should have kept him away from them. He was openly in charge.

The trial court considered the claim now made and in connection with it cited Murphy v. Lentz, 131 Iowa, 328, 108 N. W. 530, and Coglan v. Beard, 67 Cal. 303, 7 Pac. 738. It found that there had been no tampering with the ballots or the returns and that as offered in evidence they were as when returned to the county auditor.

We are of the opinion that Moon should not be prevented from making use of the ballots and returns for the purposes of his contest.

It is a matter of public concern, and not merely the interest of contesting aspirants for office, that the will of the voters be given effect. The statute which gives a right of contest permits any elector to institute one, regardless of the wishes of the candidate defeated on the face of the returns, and evinces a purpose, as does the trend of our decisions, to give effect to the actual vote cast.

It is likely true that in some jurisdictions ballots kept as these were would not be allowed in evidence to overturn the result of an official canvass, and that a contestant as close to the ballots as Moon was would not be permitted to overturn the official count by their use. We think that under the finding the trial court was right in receiving them.

The election was very close. A slight change in the two uncounted precincts would give the election to Harris; but the presumption is against such change. A slight tampering with the ballots might bring the same result; but the finding is that there was no tampering. The finding of the trial court that Moon was elected by a majority of three is supported by the evidence.

Order affirmed.