## GERALD W. CHRISTENSON v. CLAUDE H. ALLEN AND OTHERS.

119 N. W. (2d) 35.

January 8, 1963—No. 38,967.

*Fine, Simon & Schneider* and *Ralph S. Schneider,* for appellant. *Briggs & Morgan, Richard E. Kyle,* and *M. J. Galvin, Jr.,* for respondent Allen.

ROGOSHESKE, JUSTICE.

Appeal from an order dismissing an election contest proceeding upon jurisdictional grounds.

At the November 6, 1962, general election, contestant, Gerald W. Christenson, and contestee, Claude H. Allen, were opposing candidates for the office of state senator from the 43rd legislative district. As a result of a canvass of the votes by the Ramsey County Canvassing Board, completed on November 13, 1962, the board declared

contestee elected by a vote of 13,694 to 13,628, a margin of 66 votes. Within 10 days after this action by the canvassing board and on November 20, 1962, contestant served and filed a verified instrument entitled "NOTICE OF ELECTION CONTEST." After reciting the facts above set forth, except for disclosing the total number of votes cast for each candidate, the instrument, which must be regarded under our election laws as a pleading essential to invoke jurisdiction,[1] contained the following:

"3.

"After final votes or ballots in said election had been counted and approved by the County Canvassing Board, duly appointed under the election laws of the State of Minnesota, above named Plaintiff was declared to have been defeated by 66 votes.

"4.

"Plaintiff has reason to believe that possible errors could have occurred in counting of ballots in said election for Senator of the 43rd Legislative District and the only question is as to which of the Parties in said Senatorial Contest received the highest number of votes legally cast at the election on November 6, 1962 and as to who is entitled to receive the Certificate of Election.

"5.

"Plaintiff urges above named court who have jurisdiction in this matter to order the withholding of the Certificate of Election of Senator of the 43rd Legislative District until a recount of ballots can be made under Section #209.06 of the Election Laws of the State of Minnesota.

"6.

"Plaintiff has filed with Clerk of District Court a Bond of $250.00 as required under Section 209.06(2) of the Election Laws of the State of Minnesota."

Simultaneously, contestant's original attorney signed and served an unverified petition requesting the court to allow the inspection of ballots in certain specified precincts.

---

[1]Minn. St. 209.04.

When the matter came on for hearing on November 28, 1962 (after adjournment from November 26, 1962), contestee appeared specially and moved to dismiss on the ground that the court lacked jurisdiction in that a notice of election contest which fails to set forth the points upon which the contest will be made, and fails to allege that irregularities complained of would change the result, is a nullity. At a continued hearing on December 3, 1962, contestant moved to amend his notice by alleging in substance that votes were improperly tabulated; that some were improperly marked, defaced, and identifiable; that errors were made in counting the votes and in recording the names of voters in the election registration; and that if such errors had not been made, contestant would have received a plurality of the votes cast. His amended petition for inspection of ballots, verified by contestant, was served and filed December 10, 1962, on which date contestant substituted new attorneys to represent him in further proceedings below and on this appeal. On December 5, 1962, the court entered an order dismissing the proceeding on the ground that the court "did not acquire jurisdiction of this proceeding because the Notice of Election Contest did not comply with the applicable statutes relating to election contest proceedings." Contestant's motion to amend was denied on the same ground. He appeals from both holdings.

The problem presented is whether the notice of contest complied with the requirements of applicable statutes and, if not, whether it was so fatally deficient as to prevent the court from acquiring jurisdiction to permit amendments subsequent to the expiration of the period prescribed for serving and filing notice.

Contestant contends that where only a recount is sought, and there is no claim of corrupt practice or irregularity in the conduct of the election itself, the jurisdictional requirement is met if the notice apprises the contestee that contestant believes there may have been errors in counting and desires a recount. He argues that to require an affirmative allegation of errors in counting before the ballots are unsealed and inspected is wholly unrealistic. Contestee contends that there must be strict compliance with the statutes and that the notice must specify, as points upon which the contest will be made, some irregularity in

the conduct of the election or canvass of votes, or some error in the result declared by the canvassing board, or some violation of the election laws requiring a determination that the contestant, rather than the contestee, was duly elected. He argues that contestant, by his pleading, did not apprise him of anything more than a mere suspicion of irregularity in counting the votes and of a desire to secure a recount; and that, therefore, the notice was insufficient to invoke the jurisdiction of the court.

It is elementary that both the right to contest an election and the authority of courts to hear and determine an election contest are purely statutory; and, absent statutory compliance, courts are powerless to entertain such proceedings.[2]

Minn. St. 209.02, subd. 1, authorizes a candidate or any voter who had a right to vote for the candidate to contest the election of any person declared elected. This subdivision further provides:

"* * * The contest may be brought over an irregularity in the conduct of an election or canvass of votes or on the grounds of deliberate, serious, and material violations of the provisions of the Minnesota election law."

Subd. 2 provides:

"The contestant shall file a written notice of contest specifying the points upon which the contest will be made with the clerk of the district court of the county in which the candidate whose election is contested resides; * * *."

Subd. 3 provides that the notice of contest in a general election must be filed and served within 10 days after the canvass is completed. The applicable part of § 209.04 provides:

"The notices shall be treated as the pleadings in the case, and may be amended in the discretion of the court. * * * The matter shall be tried by the court in the manner provided for the trial of civil actions so far as practicable."

---

[2]Phillips v. Ericson, 248 Minn. 452, 80 N. W. (2d) 513; 18 Am. Jur. Elections, § 275.

Section 209.06, subd. 1, provides:

"*After a contest has been instituted,* either party may have the ballots inspected before preparing for trial. The party applying for such inspection shall file with the clerk of district court in which the contest is brought a verified petition, stating that he cannot properly prepare his case for trial without an inspection of such ballots and designating the precincts in which he desires to have ballots inspected, * * *." (Italics supplied.)

Subd. 2 thereof provides that the party applying for the inspection shall file a bond in the sum of $250 on condition that he shall pay the costs and expenses of the inspection in case he fails to maintain his contest.

Addressing ourselves to the contestant's pleading in the light of the statutes, it is difficult indeed to characterize it as being more than a mere surmise that errors may have occurred in counting the ballots. In the light of the size of the vote and the margin of victory, this says no more than what any interested voter might also suspect. Under the most liberal application of our rules, it cannot be characterized as a proper pleading for it is not a statement of a claim which, if established by proof, would entitle the pleader to relief. A fair implication is that no investigation—other than a perusal of the declared results—has been made to determine whether any facts exist upon which the contestant can base a reasonable belief that errors did in fact occur. Although this may be commendable candor where no such investigation is in fact made and pleadings are required to be certified under Rule 11 of Rules of Civil Procedure, such candor can hardly supply the basis upon which a court can assume jurisdiction over the proceedings.

If we disregard the speculative nature of the notice and imply from it that contestant contended that a recount would result in his being declared the victor, we might say that he has specified, as a point upon which the contest will be made, a possible "irregularity" in the counting of the votes. But, even then, it falls far short of alleging, directly or upon information and belief as required by the clear language of § 209.02, subd. 1, any grounds upon which the contest can be

brought. Nor could it be said to comply with Rule 8.01 of Rules of Civil Procedure as being "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which he deems himself entitled, * * *." Modern rules of pleading condemn technicalities and, we believe, justifiably require a disregard for the niceties worshipped under the common-law rules of pleading;[3] but we have not yet reached the point where a mere written surmise is regarded as sufficient to invoke jurisdiction.

Contestant correctly asserts, under Moon v. Harris, 122 Minn. 138, 142 N. W. 12, that all that need be done is to apprise the adversary of the grounds of the contest so that he may be given a fair opportunity to meet asserted claims.[4] The proposed amendments to contestant's notice are a good illustration of how this can be accomplished and also of the varied attacks which may be made in a contest limited only to a recount of votes. Doubtless the general language of the proposed amendments could bring before the court many problems not specifically set forth because realistically all of them cannot be known until the ballots are inspected. But the deficiency in the language of this notice is manifest since it does not give the least intimation to contestee of even one error in counting or tabulating the votes or registering the voters known or reasonably believed to exist, much less even suspected to exist.

Clearly under the statutes, an election contest could be limited to one ground or one specified point. One of these could be errors in counting the votes, mathematical in nature or otherwise. However, when § 209.02, subds. 1 and 2, and § 209.04 are read in conjunction with § 209.06, subd. 1, it is clear that the legislature did not intend that such an allegation alone would entitle a contestant as of right to an inspection of the ballots. The plain language of § 209.06 presupposes a contest already instituted and, therefore, allows inspection only upon the court's acquiring jurisdiction of the contest and then only upon a showing that an inspection is needed to prepare for trial. O'Gorman v. Richter, 31 Minn. 25, 16 N. W. 416. Contestant apparently

---

[3]See, e. g., Soper v. County of Sibley, 46 Minn. 274, 48 N. W. 1112.
[4]See, also, Taylor v. Taylor, 10 Minn. 81 (107).

misperceives this requirement, for his notice is more in the nature of a petition for inspection of ballots than a pleading instituting an election contest designed only to secure such inspection. There may be little question that the fact of the close vote alone would compel a court to grant an inspection if it had acquired jurisdiction to exercise such discretion. But it takes little imagination to visualize a case where a recount could be resorted to as a mere "fishing expedition."[5]

If the legislature desired to provide for a recount of votes independent of an authorized election contest, as has been done in some states, it could easily have done so, vesting supervision of such a recount in a court or a commission. That the legislature has not done so is a recognition of the facts that a recount is inextricably interwoven with problems other than a mere retabulation and that the most superficial inspection would trigger questions which could best be resolved in a judicial proceeding. To invoke a court's jurisdiction, open the ballots, and subject to scrutiny the acts of sworn officials, to expose the contestee to considerable expense, and to affect the public interest by preventing the declared winner from taking office during the delay occasioned by the proceeding is surely too great a price to pay for honoring a defeated candidate's desire to inspect the ballots in order to marshal evidence upon which to justify instituting an election contest. This principle should not lose its force, even though the election is extremely close, under the guise of extolling an equally important principle that all should be done to ascertain the true vote so as to give effect to the will of the voters. Most important, it would be contrary to the express intention of the legislature.

We adhere to our declaration in Moon v. Harris, 122 Minn. 138, 140, 142 N. W. 12, 13, primarily relied on by contestant, that the notice should be "an aid, not a hindrance, to a fair investigation." That case, however, is clearly distinguishable in that the pleader did allege that he was entitled to be declared elected and did allege the fact that ballots cast were erroneously counted and returned in favor of his opponent. To say he was pleading what he did not, or could not,

---

[5]Mr. Justice Mitchell in O'Gorman v. Richter, 31 Minn. 25, 28, 16 N. W. 416, 417.

know is to make an assumption not supported by the decision or by the common experience of pleading ultimate facts in cases where such facts are frequently unascertainable before suit is started. It is still not at all uncommon to plead many facts or claims on information and belief.

Finally, each house of the legislature possesses the constitutional prerogative under Minn. Const. art. 4, § 3, of being the ultimate judge of who shall be seated as a member. A judicial review of an election contest for a legislative office is but an intermediate aid to the exercise of that plenary power. Contrary to contestant's view, the senate, in the exercise of that power, could order a recount denied by a court in the same way that it could seat one who was judicially declared to have received the highest votes and to be entitled to the certificate of election. In delegating to the courts authority to entertain election contests for a legislative office, the legislature has a right to demand, and certainly to expect, that there be strict adherence to any statutory restrictions placed upon the jurisdiction of the courts. It is only by scrupulous adherence to expressed legislative intent that the decision of the courts in this special type of proceeding finds acceptance by the branches of our legislature. In this way such judicial review becomes an aid and not a hindrance to the proper exercise of final authority by the senate and the house in resolving election contests by candidates for legislative office. To uphold this notice of election contest, which could hardly allege less by way of grounds for challenge of a declared result, would be to disregard the plain jurisdictional limits placed on the exercise of delegated power.

Much as we regret to decide any case on a question of pleading, we are constrained to hold that a notice of contest designed to limit the contest to a recount of the votes cast, which fails to allege any irregularities either in the conduct of the election or the canvass of votes, or any violation of the election law, by a plain statement showing that the contestant is entitled to a decree changing the declared result of the election, is a nullity and insufficient to invoke the jurisdiction of the court. It is to be emphasized that we are not declaring what must be alleged but that what was alleged is insufficient.

Section 209.04 does authorize amendments of the notice but we take it as conceded by contestant on argument that jurisdictional deficiencies in the notice of contest cannot be supplied by amendment after the time for filing the original notice of contest has expired. We are committed to the rule, universally followed, that where amendments to a pleading allege jurisdictional grounds not previously alleged in the initial pleading, the court cannot appropriate to itself jurisdiction which the law does not give by permitting such amendments after the time for initiating the proceeding has expired. In other words, a sufficient statutory notice of election contest must exist before the power to grant an amendment can be exercised. Strom v. Lindstrom, 201 Minn. 226, 275 N. W. 833.[6]

Affirmed.

OTIS, JUSTICE (dissenting).

I agree with the majority of the court that authorizing an election contest affecting legislative office is a right which may be granted or withheld at the will of the legislature; that a recount is merely ancillary to the judicial proceedings; and that as a matter of public policy contests which are based on pure speculation should be discouraged. However, taking the statutes by their four corners, I am not persuaded that the legislature intended to limit a recount to the precincts where a contestant shows concrete, tangible evidence of error.

Minn. St. 209.02 requires only that the contestant specify the points on which the contest is to be made. However ineptly drafted, the notice in the instant case specifies that—

"* * * the only question is as to which of the Parties in said Senatorial Contest received the highest number of votes legally cast * * *."

It seems clear that the contestant Christenson claims only mathematical errors. The contestee Allen seems to concede that had such errors been alleged on information and belief rather than by asserting that "[p]laintiff has reason to believe that possible errors could have

---

[6]See, also, Doelling v. Board of Education, 17 Ill. (2d) 145, 160 N. E. (2d) 801; Williams v. O'Neill, 142 Ohio St. 467, 52 N. E. (2d) 858.

occurred in the counting of ballots," the court would have had jurisdiction. In my opinion the distinction is entirely one of form and not of substance.

In order to marshal the kind of substantial evidence of error which would justify an unqualified allegation conforming to Rule 11 of Rules of Civil Procedure, a candidate would ordinarily be required to invoke § 204.16 and furnish a challenger in every precinct in his district in order to conduct an independent canvass contemporaneously with that undertaken by the official members of the canvassing board.[1] This I submit is wholly unrealistic and a complete departure from existing practice.

That it is not a matter of legislative policy that recounts be conducted only where a candidate has tangible evidence of error is apparent from the language of § 209.06. That statute authorizes an inspection of the ballots in whatever precincts either party desires to designate, regardless of whether they are precincts in which a party in his original petition has alleged that errors occurred. For example, it is not my understanding that the contestant in the current gubernatorial contest was obliged to allege irregularities in every precinct of the state in order to secure the statewide recount which is now in progress. If it was the intention of the legislature to permit a total recount under these conditions, it occurs to me that logically they did not intend to preclude this procedure in initiating an original action where there is manifestly an equal probability of error.

For us to determine judicially that there is no basis for alleging the likelihood of an erroneous determination of an election result, where a change of 34 votes or 1/10 of 1 percent would reverse the outcome, is to blind ourselves to all the realities of the election processes, particularly where a great many paper ballots are used. I believe we can take judicial notice that in the situation confronting us there were sufficient errors to justify a contest.

---

[1] Minn. St. 204.16, subd. 2. "At any election each nonpartisan candidate may appoint by written certificate, and the judges shall permit, one voter for each precinct to be in the polling place while the election is being held and to remain with the election board until the votes are canvassed and the results declared, to act as challenger of voters."

As we said in Moon v. Harris, 122 Minn. 138, 140, 142 N. W. 12, 13:

"* * * This court has never been averse to the allowance of a fair opportunity of ascertaining the actual result of an election. The important thing is that the truth be ascertained and the will of the voters be given effect; * * *."

If it had been the purpose of the legislature to confer jurisdiction only where specific errors in specific precincts have been ascertained and alleged, it seems to me the statute would have been so drafted. However, having sanctioned a recount in precincts where no allegation of error is required, the legislature, I believe, has indicated an intention to give the statute a liberal construction so that doubts in the outcome of an election may be judicially resolved and the true vote of the people determined.

THOMAS GALLAGHER, JUSTICE (dissenting).
I concur in the dissenting opinion of Mr. Justice Otis.

MR. CHIEF JUSTICE KNUTSON took no part in the consideration or decision of this case.