Lauren L. **GREENLY**, Respondent,

v.

**INDEPENDENT SCHOOL DISTRICT #316, Respondent,**

**Dale Fuhrman, et al., Appellants.**

No. C0-86-1050.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Mark T. Groettum, Hibbing, for Lauren L. Greenly.

Independent School Dist. No. 316, pro se.

Jon A. Maturi, Grand Rapids, for Dale Fuhrman, et al.

Considered and decided by NIEREN-GARTEN, P.J., and WOZNIAK and SEDG-WICK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Dale Fuhrman and Donald Boese were elected as write-in candidates to the school board of Independent School District # 316.

Lauren L. Greenly, a voter in the district, contested the election and the district court, Itasca County, invalidated the results of the election following a court trial. Fuhrman and Boese appeal from the judgment of the court and from a subsequent order granting in part and denying in part their motion for amended findings. We reverse.

## FACTS

Independent School District # 316 is located in Itasca County and has its offices in Coleraine, Minnesota. The contested election was held on May 20, 1986. Loren Vogler and Dennis Tennison were incumbent directors of the school district. Their terms were to expire July 1, 1986. Vogler and Tennison were the only candidates who filed for the election.

During the week immediately preceding the election, Boese, a resident of Bovey, Minnesota, was approached regarding a write-in campaign and agreed to serve if elected. He took no action and contacted no one to gain support or votes.

Fuhrman, the mayor of LaPrairie, Minnesota, had contemplated filing as a candidate, but had decided against it. Two days before the election, however, he was contacted by friends and neighbors in LaPrairie and agreed to be a write-in candidate. He contacted 30 to 40 other voters in the district and urged them to spread the word to write in his name. The trial court found that neither Fuhrman nor Boese knew the identity of the other write-in candidate until shortly before the election.

Late in the afternoon of May 19, 1986, Gerald Ruuhela, a school district resident, dropped off several copies of Exhibit 1 at Wallace Stokes' barber shop in Calumet, one of the district precincts. Exhibit 1 is a handwritten document bearing a facsimile of a write-in ballot with the names Dale Fuhrman and Donald Boese written in and an "X" placed in the box preceding each name. Above this is written: "Dist. 316 Board Election Write-in Candidates" and below is written " * Write name in blank

Put 'X' in box." (See facsimile of Exhibit 1 in the appendix to this opinion.)

The polls were open from 11:00 a.m. to 8:00 p.m. on May 20. At noon, a voter observed three copies of Exhibit 1 in the voting booth at the Bovey polling place. He did not remove the documents or bring them to anyone else's attention. Another resident of Bovey found two copies of Exhibit 1 in the booth when she voted at around 12:30 or 1:00 p.m. She did not remove them or bring them to anyone's attention. Another voter observed one copy of Exhibit 1 when she voted in Bovey at about 3:00 p.m. She did not remove it or bring it to anyone else's attention.

At about 2:00 p.m., a voter came into the polling place in Bovey to vote and asked the election judge if they had "any of those slips of paper with the names on * * * so that they could have an option to vote." The election judge replied that they did not.

At some time during the afternoon, a voter came into the Bovey polling place and received his ballot from the election judges. He remarked that the ballot had only two names on it and began to inquire whether these were the only two candidates for whom they could vote. Another man who had already voted then took him by the arm and the two began walking outside. One of the election judges testified that they were "acting kind of silly." Another election judge went out and told them to bring the ballot back inside.

At about 3:30 p.m., a voter found a copy of Exhibit 1 in her voting booth in Bovey. Fuhrman identified this voter as one of the supporters he contacted on May 18. The voter told one of the election judges that she had found the sample ballot in the booth but had destroyed it. The Bovey election judges then checked all the booths but found no other copies of Exhibit 1. About the same number of voters had voted at Bovey prior to this incident as voted afterward.

At about 1:15 p.m. in Coleraine, JoAnne Tennison, wife of incumbent Dennis Tennison, found a piece of paper in her voting booth with only the names of the two write-in candidates written on it. She took it with her, but didn't report it to the election judges. She later lost it, but drew a facsimile which was entered in evidence as Exhibit 4. Exhibit 4 depicts a slip of paper with the two names, but nothing else, hand-written on it. (See facsimile of Exhibit 4 in the appendix to this opinion.)

Virginia Peavey, one of the election judges in LaPrairie, received five copies of Exhibit 1 from Gerald Ruuhela at about 9:00 p.m. on May 19, the day before the election. She gave three to neighbors and brought two to the LaPrairie polling place. She placed them on the table in front of her when she arrived at 10:00 a.m. Voters received their ballots from Peavey and the slips of paper were on the table between the registration area and the voting booths.

Peavey used one when she voted and gave the other to her husband when he voted between 3:00 and 4:00 p.m. She testified that the slips were turned over at all times and covered with a coffee cup. Both of the other judges, Ilo Underwood and Iola Mostoller, saw the slips and Underwood testified that she saw printing on them. Mostoller turned one over and saw the names of the write-in candidates.

On May 21, 1986, the votes were canvassed. The results were:

Fuhrman ........... 398 votes
Boese .............. 343 votes
Tennison ........... 314 votes
Vogler ............. 235 votes

Fuhrman and Boese were declared the winners.

Of the 708 ballots cast, 199 were cast in Coleraine, 126 in Bovey, and 106 in La-Prairie. Fuhrman and Boese won in Coleraine and LaPrairie by wide margins. They also won in Bovey and all other precincts except Taconite, Pengilly, and Trout Lake, where the incumbents won by wide margins.

On May 27, Greenly served the four candidates and the school superintendent with a notice of contest, which read:

To: Clerk of District Court
 Itasca County

Due to the alleged voting violations that seemed to occur during the recent School Board Election of District # 316, I, Lauren L. Greenly a registered voter in District # 316, wish to contest the results of this election untill [sic] an investigation can be completed.

/s/ Lauren L. Greenly

Greenly was not represented by counsel when he served and filed his notice of contest.

On June 4, the district court caused a notice to respond and a notice of trial to be served on the four candidates and the school district. Fuhrman and Boese filed responsive pleadings. Fuhrman challenged the sufficiency of Greenly's notice of contest in his responsive pleading immediately before trial, and moved to dismiss on this ground. Greenly meanwhile obtained counsel to represent him. Immediately before trial, counsel served and filed a memorandum of law containing a detailed description of the points upon which the contest would be made. The trial court held that this memorandum constituted a permissible amendment of pleadings and denied Fuhrman's motion to dismiss.

The case was tried to the court on June 10, 1986. The district court found that neither Fuhrman nor Boese had anything to do with the preparation and distribution of any of the slips of paper bearing their names, and knew nothing of and did not authorize any violations of law.

The trial court concluded, however, that the issuance and circulation of Exhibit 1 constituted a serious and material violation of law because it did not bear on its face the name and address of the persons causing it to be circulated, in violation of Minn. Stat. § 210A.03 (1984), and because it was present in the voting booths in Bovey in violation of Minn.Stat. § 123.32, subd. 27(a) and (c). The court concluded that the issuance and circulation of Exhibit 1 tended to influence voting, probably affected the outcome of the election in the Bovey and LaPrairie precincts, and may have affected the outcome of the entire election.

The court concluded that the presence of Exhibit 4, a slip of paper with merely two handwritten names thereon in a voting booth in Coleraine, was a violation of law for the same reasons. The court concluded that this violation would have been trivial had it not occurred in conjunction with the violations with respect to Exhibit 1.

The court concluded that, while the evidence showed no fraudulent intent to unlawfully affect the outcome of the election, "the totality of the circumstances surrounding the violations * * * seriously undermined the integrity of the election process and the confidence of the electorate."

The court declared the results of the election and the election itself to be null and void.

## ISSUES

1. Did the trial court abuse its discretion by allowing the contestant to amend his notice of contest immediately before trial?

2. Did the trial court abuse its discretion in admitting testimony regarding the election's reputation in the community?

3. Did the trial court clearly err in finding that the presence in the voting booths of slips of paper in the form of sample ballots with the names of write-in candidates on them "tend[ed] to influence voting" under Minn.Stat. § 210A.03 (1984), or were "designed to influence a voter" under Minn.Stat. § 123.32, subd. 27(c) (1984)?

4. Did the trial court err in concluding that the election law violations were so serious as to justify invalidation of the election results?

## ANALYSIS

1. Minn.Stat. § 123.32, subd. 25(a) (1984) provides:

Contests. (a) Any voter may contest the election of any person for or against whom he had the right to vote, who is declared elected to a school district of-

fice, or other questions submitted to public vote, by proceeding as follows:

> He shall file with the clerk of the district court of the county in which the administrative office of the school district is located, *within ten days* after the canvass is completed, a written notice of contest *specifying the points upon which the contest will be made.*

*Id.* (emphasis added).

■ Because the right to contest an election is purely statutory, the provisions of the statute relating to the filing and serving of notice must be strictly followed if the court is to acquire jurisdiction. *Lebens v. Harbeck*, 308 Minn. 433, 434, 243 N.W.2d 128, 129 (1976) (citing *Petrafeso v. McFarlin*, 296 Minn. 120, 207 N.W.2d 343 (1973)); *Hancock v. Lewis*, 265 Minn. 519, 522, 122 N.W.2d 592, 594 (1963).

■ In order for a contestant to be entitled to amend his notice of election contest after the time for filing notice has expired, the original notice must have been valid under the statute, stating facts upon which, if proved, relief could be granted. If the original notice is invalid, it cannot be validated by amendment after the expiration of the statutory period. *Schmitt v. McLaughlin*, 275 N.W.2d 587, 590 (Minn. 1979); *Hancock*, 265 Minn. at 521–22, 122 N.W.2d at 594. Here, the trial court treated contestant's memorandum of law, filed immediately before trial, as an amendment of the notice of contest. The memorandum was filed after the expiration of the 10–day period for filing the original notice. It is therefore necessary to determine whether the original notice was sufficient.

■ A notice of election contest is sufficient if it states facts sufficient to apprise the contestee of the grounds of the contest so that he is given a fair opportunity to meet the asserted claims. *See Christenson v. Allen*, 264 Minn. 395, 400, 119 N.W.2d 35, 39 (1963). A notice which charges irregularities in the election but fails to allege how these irregularities deprived the voters of a fair election does not constitute valid notice. *Hancock*, 265 Minn. at 523, 122 N.W.2d at 595 (1963).

In *Hancock*, the supreme court held that the original notice was invalid where the contestant alleged that he "believe[d]" certain irregularities had occurred, "depriving the qualified electors of Pine Island Village of a fair opportunity to vote at said election and that said election should be held invalid and the results nullified." *Id.* at 520, 122 N.W.2d at 593. The irregularities alleged were improper issuance and receipt of absentee ballots and improper conduct on the part of election judges. The court held that the notice was invalid because it failed to allege how these irregularities deprived the voters of a chance to vote. *Id.* at 523, 122 N.W.2d at 595.

In *Christenson*, the supreme court held invalid a notice which stated in pertinent part:

> Plaintiff has reason to believe that possible errors could have occurred in counting of ballots in said election for Senator of the 43rd Legislative District and the only question is as to which of the Parties in said Senatorial Contest received the highest number of votes legally cast at the election on November 6, 1962 and as to who is entitled to receive the Certificate of Election.

264 Minn. at 396, 119 N.W.2d at 37. The supreme court held that the notice was insufficient to invoke the jurisdiction of the court. *Id.* at 402, 119 N.W.2d at 40–41.[1]

---

1. We note that the result in *Christenson* has been altered by the legislature. Minnesota Statutes section 209.03 (1984) provides that

 > [w]hen the notice of contest questions only which of the parties to the contest received the highest number of votes legally cast at the election, the contestee need not file an answer.

 *Id.* The supreme court has held that, pursuant to this statute, a notice of contest that questions only which party received the highest number of votes is sufficient to confer jurisdiction on the courts and need not allege specific irregularities in the conduct of the election or the canvass of the votes. *Holmen v. Miller*, 296 Minn. 99, 109, 206 N.W.2d 916, 922 (1973). The case at bar does not involve the issue of which candidates received the most votes. We believe that, although the precise result in *Christenson* has

■ Here, the notice of contest was even more insufficient than those in *Christenson* and *Hancock.* It does not "[specify] the points upon which the contest will be made." Minn.Stat. § 123.32, subd. 25(a). In *Christenson* and *Hancock,* the notices at least referred to the general nature of the violation alleged. Here, the notice refers only to *"alleged* voting violations that *seemed* to occur." (Emphasis added.) It does not allege what these violations were, let alone how they deprived the voters of a fair election, as required by *Hancock.* Because the original notice is invalid, the amendment filed after the 10–day limit is also invalid.

■ Respondent argues that appellant waived any objections to any defect in the notice of contest. This argument is not supported by the record. Appellants waived only any claim that the original notice was not filed within the required 10–day period, a point not at issue on appeal. Furthermore, the statutory requirements regarding serving and filing of the notice of contest are jurisdictional. *See Lebens,* 308 Minn. at 434, 243 N.W.2d at 129. Jurisdiction cannot be conferred by consent of the parties.

Respondents also argue that the Minnesota Supreme Court has recently adopted a "substantial compliance theory" regarding the contents of notices of election contest. Respondent cites four cases in support of this theory. None supports his position. *Borg v. Fjoslien,* 299 Minn. 201, 216 N.W.2d 265 (1974), dealt only with the issue of the sufficiency of service of process.

In *Holmen,* 296 Minn. 99, 206 N.W.2d 916, the court held that a notice of contest which questions only which candidate got the highest number of votes legally cast is sufficient to confer jurisdiction on the court. *Id.* at 109, 206 N.W.2d at 922. The court based its holding on Minn.Stat. § 209.03 (1972) which provided that "[w]hen the notice of contest questions only which of the parties to the contest received the highest number of votes legal-

ly cast at the election, the contestee need not file an answer." The court held that this statute evidenced a legislative intent that all election contests limited to this issue be within the jurisdiction of the courts.

*Petrafeso,* 296 Minn. 120, 207 N.W.2d 343, likewise does not stand for the substantial compliance rule advocated by respondents. The court held that, where the contestant complied with all the statutory requirements necessary to acquire jurisdiction, but the clerk of court failed to perform his statutory function by sending a copy of the notice to the chief justice of the supreme court, the clerk's failure was not chargeable to the contestant.

Finally, *In re Johnson,* 304 Minn. 534, 231 N.W.2d 926 (1975), also dealt only with service of process. In *Johnson,* the court affirmed the dismissal of the action for failure to serve the contestee within the time period prescribed by statute.

None of the cases cited by respondent support the argument that the court has adopted a "substantial compliance" rule with regard to the *contents* of the notice. *Hancock* and *Christenson* are the controlling cases regarding the sufficiency of the notice itself, and they require dismissal of the action in this case. Because we decide the case on these grounds, it is unnecessary to reach the other issues raised by appellants.

In so holding, we are sympathetic to the voters in the district who would have preferred that this appeal consider the other issues. However, there is a strong public policy in favor of finality in elections. The will of the voters in any election could easily be subverted by the filing of a groundless notice of contest, or even by the filing of a meritorious notice weeks after the election. To this end, the legislature has required that one who plans to challenge an election clearly state the points upon which he will do so and that he file his notice soon after the election. The Min-

---

been altered by legislative action, the *Christen-* son opinion is still persuasive dicta in this case.

**92**

nesota Supreme Court has held that these requirements must be strictly followed.

 We note that the trial court expressly found that neither of the write-in candidates was involved in the preparation or distribution of any campaign literature, and that neither was involved in or aware of any election law violations. In the absence of fraud or bad faith or constitutional violation, an election will not be invalidated by minor irregularities, including statutory violations, if the election nonetheless "resulted in a free and fair expression of the will of the voters on the merits." *Erickson v. Sammons,* 242 Minn. 345, 350, 65 N.W.2d 198, 202 (1954), *quoted in Green v. Independent Consolidated School District # 1,* 252 Minn. 36, 44, 89 N.W.2d 12, 17–18 (1958).

We also note that the trial judge's decision that the irregularities in this election justified its invalidation appears to be based in part on the fact that the write-in candidates did not announce their candidacies until the last minute and took no steps to secure legal radio, television, or newspaper announcements of their campaign. No law requires otherwise.

## DECISION

The decision of the trial court is reversed.

## APPENDIX