# DAVID MUNNELL v. G. F. ROWLETTE AND OTHERS.

145 N. W. (2d) 531.

September 23, 1966—No. 39,854.

*Robert A. Nicklaus,* for appellant.

*Powell & Dessert* and *Edward E. Dessert,* for respondents.

THOMAS GALLAGHER, JUSTICE.

In a municipal election held December 8, 1964, in the village of Cass Lake, G. F. Rowlette, whose term as municipal judge was expiring, was a candidate to succeed himself. No one had filed to oppose him, but on election day one Sam Gokey, and others representing him, had handed out stickers to prospective voters bearing his printed name and his candidacy for this office. At the election, Judge Rowlette received 226 votes and Mr. Gokey received 184 sticker votes for the office.

On December 17, 1964, pursuant to Minn. St. 209.02, subd. 1,[1] no-

---

[1] Minn. St. 209.02, subd. 1, provides: "Any voter, including a candidate, may contest the nomination or election of any person for whom he had the right to vote, who is declared nominated or elected to the senate or the house of representatives of the United States, to a state, county, legislative, or municipal, or district court office, or the declared result of a constitutional amendment or other question voted upon at an election by proceeding as

tice of an election contest with respect to the office of municipal judge was filed and served upon Judge Rowlette on behalf of David Munnell, which notice alleged that activities and conduct of Judge Rowlette in the election constituted a violation of §§ 203.14,[2] 204.06, subd. 1,[3] 210.06,[4] 211.12,[5] 211.15,[6] 204.11, subd. 1,[7] and 204.22[8] and invali-

provided in this chapter. The contest may be brought over an irregularity in the conduct of an election or canvass of votes or on the grounds of deliberate, serious, and material violations of the provisions of the Minnesota election law."

[2] Section 203.14 provides: "All voters shall be allowed to go to the polling place for the purpose of voting, and to return therefrom, without molestation, but neither voters nor others shall be allowed to congregate in any number within 100 feet of any polling place. Only election officers and voters who are waiting to vote shall be permitted to stand within 50 feet of the entrance to a polling place."

[3] Section 204.06, subd. 1, provides in part: "Except as provided in this subdivision * * * no person may remain inside the polling place except members of the election board, peace officers, challengers, and voters who are about to vote."

[4] Section 210.06 provides: "Every judge, officer, or other person, who, within or without any polling place, directly or indirectly uses or threatens to use any force, violence, or restraint, or causes or threatens to cause any damage, harm, or loss to any person, with intent to induce, or in any way attempts to induce or compel, such person, or any other person, to vote or refrain from voting at any election, or to vote in any particular way, or who within any polling room, or in any booth or room connected therewith, or within 100 feet from the entrance to any such polling place, asks, persuades, or endeavors to persuade any person to vote for or against any particular candidate, party, or proposition, or who, by abduction, duress, or any fraudulent device or contrivance, impedes or prevents the free exercise of the franchise at any election, or who by any such means, compels, induces, or prevails upon any voter either to give or refrain from giving his vote at any election, shall be guilty of a gross misdemeanor."

[5] Section 211.12 provides: "No person shall directly or indirectly by himself or any other person in his behalf, make use of or threaten to make use of any force, coercion, violence, restraint, or undue influence, or inflict or threaten to inflict by himself, or any other person, any temporal or spiritual injury, damage, harm, or loss upon or against any person in order to induce or compel such person to vote or refrain from voting for any

dated the election. The contest was tried in the District Court of Cass County December 29, 1964, and on February 18, 1965, that court made findings and conclusions in which it determined that the election had resulted in the casting of 410 valid and legal votes for the office of municipal judge. The court thereupon ordered judgment that Judge Rowlette had been duly elected.

The principal, and in fact only, issue which the trial court considered and determined related to claimed irregularities in the conduct of Judge Rowlette in "permitting an unauthorized person to remain in the polling place contrary to the provisions of M.S.A. Secs. 203.14 and 204.06." Other claims relating to irregularities were either withdrawn by stipula-

---

candidate or the ticket of any political party, or any measure before the people, nor shall by abduction, duress, or any fraudulent contrivance, impede or prevent the free exercise of the franchise of any voter at any primary or election, or compel, induce, or prevail upon any elector to give or to refrain from giving his vote at any primary or election."

[6] Section 211.15 provides: "Subdivision 1. It shall be unlawful for any person within 100 feet of the building in which any polling place is situated on the day of any primary or election to ask, solicit, or in any manner try to induce or persuade any voter on such primary or election day to vote for or refrain from voting for any candidate or the candidates of any political party or organization, or any measure submitted to the people; * * *.

"Subd. 2. Any person who shall at any place on the day of any primary or election * * * circulate or distribute, or cause to be circulated or distributed, any campaign cards, candidates' cards, placard or campaign literature of any kind whatsoever shall be guilty of a misdemeanor. * * *"

[7] Section 204.11, subd. 1, provides: "Having withdrawn from the voting booth with his ballots, the voter shall hand them to the judge in charge of the ballot boxes, and the judge immediately shall deposit each ballot in the proper box."

[8] Section 204.22 provides: "In counting ballots a ballot may not be rejected for any technical error that does not make it impossible to determine the voter's choice even though the ballot may be slightly soiled or defaced. All ballots shall be counted for the persons for whom they were intended, so far as the intent can be clearly ascertained from the ballots themselves; and in determining the intent the following rules are applicable and shall be observed: [here follow the rules referred to which presumably did not become involved in these proceedings]."

tion or disregarded because of the absence of any evidence to support them.

The evidence established that municipal elections in Cass Lake are held in the municipal hall, a portion of which is regularly used as the municipal polling place. Another portion is set apart for the municipal court with space for a podium, lawbooks, records, and files, and is separated from the remainder of the hall by a railing. The entrance to the main hall is opposite the court area so that voters entering to cast their votes do not pass in close proximity to the court. In the rear of the municipal court area, a room is set apart for the municipal police station. Access to this section of the hall may be gained from the front area or from an outside door in the rear of the building.

Judge Rowlette testified that on the morning of the election he went to his courtroom where he remained for approximately 1½ hours, devoting himself to matters relating solely to the conduct of his court; that during this period he was not aware that a sticker campaign was being conducted for his office—in fact did not learn of this until after the close of the polls; and that at no time did he talk to any voter or solicit any vote or seek to influence or coerce any voter in any manner whatever.

The evidence indicated that during the election Police Officer Clifford Dupont, himself a candidate for the office of municipal constable, and another police officer passed through the hall on their way to the police station and that from time to time a police car was parked in front of the building; that sometime during the afternoon Officer Dupont, while in the performance of his duties, observed that at a main street intersection one Orville Lufkins was passing out stickers with the name "Sam Gokey" printed thereon as a candidate for municipal judge; that at that time Officer Dupont directed Lufkins to accompany him to the municipal hall so that he might inquire of an election judge as to the legality of Lufkins' activities; and that after being advised that the conduct was entirely legal, Dupont permitted Lufkins to return and continue with his campaigning. There was no evidence that any of Dupont's actions as above described were undertaken upon the directions or with the knowledge, consent, sanction, connivance, or suggestion of Judge Rowlette.

There was evidence that on December 5 and 7, 1964, Judge Rowlette ordered the suspension of the sentences and the release of certain prisoners held in the municipal jail for misdemeanors; that this was in accordance with the practice Judge Rowlette had inaugurated a number of years before to give the released prisoners time to earn money for Christmas shopping. The record did not indicate whether the released prisoners were eligible voters of the village of Cass Lake or that they were ever requested or solicited to vote for Judge Rowlette at the coming municipal election.

The trial court found that the acts or incidents set forth above "did not impede or prevent the free exercise of the franchise of any voter at the Cass Lake municipal election of December 8, 1964 or affect the merits of the election, and said acts were trifling and immaterial."

In a memorandum attached to such findings, the court stated:

"The evidence clearly established that the election officials violated the provisions of M.S.A. Sec. 204.06, subd. 1, by permitting an unauthorized person, who in fact was a candidate for an office being voted on in the election, to remain in the polling place for a period of 1½ to 2 hours. However, the fact of a statutory violation does not ipso facto operate to invalidate the election, either in whole or as to the office being contested. * * * [Citing In re Order of Sammons, 242 Minn. 345, 65 N. W. (2d) 198.] 
       \*   \*   \*   \*   \*

"Having in mind the fact that the unauthorized person within the polling place in the present case was a candidate for office, it may well be a court would, in the absence of some reasonable explanation for the unauthorized presence of the candidate, be justified in finding such fraud or bad faith as would warrant invalidating the election. However, in the light of the circumstances existing in Cass Lake on December 8, 1964 and in the absence of any proof that voters did not fairly and freely express their will in voting, I do not feel this should be the result in the present case. * * * It does not appear that his presence interfered with the conduct of the election in any respect or that it served to influence any voter to refrain from voting or to change his vote * * *. While two or three witnesses testified that they were prompted to delay

voting because of contestee's presence in the polling place, all testified that they did vote and voted as they wished. Certainly, on the showing made, the court could not find that the election resulted in anything other than 'a fair and free expression of the will of the voters.'

\* \* \* \* \*

"\* \* \* [T]he court has found that a police officer did briefly interrupt a voter in the conduct of a sticker campaign while the officer ascertained whether such activities were legal. However, I am unable to conclude that such act constituted a corrupt practice and even if it did, the contestee should not be deprived of his office by reason thereof. The corrupt practices act is directed to the acts of the candidate whose office is sought to be vacated or to the acts of those for whom such candidate is responsible. There was no showing whatever to connect the contestee to the act of the police officer and in the absence of such showing, there is no justification for holding the contestee responsible for it.

"\* \* \* [T]he finding was made that the police car was parked in front of the polling place at various times on election day, but there was no evidence that this fact operated to deter anyone from voting or to influence their vote \* \* \*. \* \* \* [M]y attention has not been called to any statute or decision requiring that law enforcement officers and their vehicles be excluded from the vicinity of the polling place in order that law violators be afforded a safe opportunity to exercise their franchise. In any event, there is no possible basis in the evidence for holding the contestee responsible for this act of the police officers.

\* \* \* \* \*

"\* \* \* [T]he act of the contestee in ordering the release of Cass Lake residents from jail \* \* \* was in accordance with his practice in previous years, \* \* \* it involved both residents and non-residents of Cass Lake, and \* \* \* as an unopposed candidate for the office of municipal judge, the situation was not one where the contestee was obliged to curry favor among those he had sentenced to jail.

"\* \* \* The contestee, so far as he knew, was an unopposed candidate for an office. He hadn't undertaken to campaign for office by legitimate

means and no reason is perceived why he should resort to deliberate violations of the law in order to influence voters."

In this appeal from the order determining the validity of the election, appellant-contestant asserts that the trial court erred in holding that the acts and conduct of the incumbent, G. F. Rowlette, did not invalidate his election and that in any event the contestee was not eligible for the office of municipal judge because he was not admitted to the bar of the State of Minnesota, and therefore was not "learned in the law" pursuant to Minn. St. 488.06, subd. 6. A number of other errors are assigned in appellant's brief, but as they are neither argued nor supported by citations and authorities they will not be considered here, principally because the court finds that none of them would justify invalidation of the election involved.

■ We have examined the evidence and find it more than adequate to support the trial court's findings and conclusions with respect to the validity of the election. As the court indicated in its memorandum, the law is well settled that statutory violations in the conduct of elections do not of themselves invalidate the election either in whole or in part if the election appears to have resulted in a fair and free expression of the will of the legal voters. Thus, in In re Order of Sammons, 242 Minn. 345, 350, 65 N. W. (2d) 198, 202, we stated:

"* * * *After an election has been held,* the statutory regulations are generally construed as directory and such rule of construction is in accord with the policy of this state, which from its beginning has been that, in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election except in those cases where the legislature has clearly * * * expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequence of invalidity."

Certainly there is nothing to even suggest that the incumbent municipal judge by his presence in his courtroom for some 1½ hours during

the morning of the election interfered with the conduct of the election or sought to influence the voters with respect thereto. It is also clear that his presence in the courtroom was at a time when he was completely unaware that there was any opposition to his candidacy and he was engaged only in the performance of his duties. This factual situation formed an adequate basis for the court's determination that the election of the incumbent candidate was valid.

■ We are in accord with the trial court's conclusion that the conduct of the police officer during the campaign should not invalidate the election. While it is true that his action in taking the campaign worker to the municipal hall during the election was unwarranted, it is equally clear that such action was not directed by the incumbent candidate and in fact was taken without his knowledge or consent. As the trial court stated, the Corrupt Practices Act is directed to the actions of the candidate for office and to persons for whom he is responsible. Here, where none of the actions complained of were those of the candidate and where there is nothing to show that he had sanctioned them, it would follow that any violation of the Corrupt Practices Act would not be chargeable to him. The same rule applies to claims made with respect to the occasional presence of the police car in front of the polling place on election day. It is clear that it was not parked there at the suggestion or upon the direction of the incumbent candidate and that its presence there was in accordance with the customary practice of village police officials. Again, the compelling conclusion is that there was nothing with respect to this incident which could be charged to the incumbent or would invalidate the election.

■ With respect to the release of a few prisoners from jail prior to the election, the evidence does not establish that any of them were voters of the village of Cass Lake or had been directed or solicited to vote for the incumbent in exchange for their freedom. It is also clear that in releasing them the incumbent was only following a practice which he had inaugurated many years before. We find nothing therein which would justify the invalidation of his election.

■ The qualifications of Judge Rowlette to hold office as one

learned in the law are governed by § 488.06, subd. 6.[9] As indicated, this section relates to incumbent judges holding office at the time of its enactment. Judge Rowlette testified that he had been elected judge of the municipal court in Cass Lake for 6 years in December 1958 and that he had served continuously in that position since that time. Inasmuch as January 1, 1960, is the effective date referred to in § 488.06, subd. 6, it is clear that the incumbent was eligible and qualified to hold the office of municipal judge of the village of Cass Lake.

The judgment appealed from is affirmed.

Affirmed.

---

[9] Section 488.06, subd. 6, provides: "The present judges of any municipal court existing in any city, village, or borough are hereby confirmed and continued in office. Each such judge shall serve for the balance of his present term and until his successor is elected and qualified. Each incumbent municipal judge or special municipal judge, in office on the effective date of Laws 1959, Chapter 660, is deemed learned in the law for the purpose of his continuance in, and re-election to, his office."