**In the Matter of the CONTEST OF ELECTION IN the DFL PRIMARY ELECTION HELD ON TUESDAY, SEPTEMBER 13, 1983, for the purpose of nominating a DFL candidate to run for election as Alderman in the Third Ward of the City of Minneapolis, County of Hennepin, State of Minnesota.**

**Patrick M. DAUGHERTY, contestant, Petitioner,**

**v.**

**Sandra M. HILARY (candidate whose election is contested), contestee, Respondent,**

**Lyal Schwarzkopf, Minneapolis City Clerk, and Lyle Lund, Assistant City Clerk, contestees, Respondents.**

No. C4–83–1635.

Supreme Court of Minnesota.

Feb. 10, 1984.

Rehearing Denied March 13, 1984.

Irving Nemerov, Brian F. Rice, LeFevere, Lefler, Kennedy, O'Brien & Drawz, Minneapolis, for appellant.

Dennis L. Peterson, Minneapolis, for respondent Hilary.

Robert Alfton, Minneapolis, for respondent City of Minneapolis.

## OPINION

PETERSON, Justice.

This is an election contest commenced in Hennepin County District Court by contestant-appellant, Patrick M. Daugherty, alleging that contestee-respondent, Sandra M. Hilary, made a false claim of party support in her DFL primary election campaign for alderman from the Third Ward of the City of Minneapolis. Specifically, Daugherty alleges that the distribution of 13,000 documents, entitled "Official Sample Ballot," violated Minn.Stat. 210A.02 (1982), because the ballot falsely implied that Hilary was endorsed by the DFL party. The trial court ruled that Hilary violated section 210A.02 and that the violation was deliberate, serious, and material. The trial court further ruled, however, that the violation did not seriously or materially affect the outcome of the election and that it did not arise from any want of good faith. Based on these findings, the trial court refused to set aside the primary election. We reverse.[1]

The Third Ward of Minneapolis is one of the heaviest DFL voting areas in the State of Minnesota. The ward has traditionally elected the DFL endorsed candidate for alderman. As a result, success in the DFL primary is tantamount to election to the office of Third Ward alderman.

Patrick Daugherty has been Third Ward alderman since 1977. He was the endorsed DFL candidate when he was re-elected in 1979 and 1981. In 1983, he was opposed by Sandra Hilary for the DFL party endorsement and the DFL space on the general election ballot. The DFL Third Ward convention endorsed Daugherty on March 21, 1983. The endorsement gave Daugherty the right to be included on the official DFL sample ballot, which would be distributed by the DFL City Central Committee prior to the primary election.

During the 3 days prior to the primary election, Hilary distributed 13,000 copies of a document entitled "Official Sample Ballot." The front of the document, highlighted in yellow, appeared as follows:[2]

1. This opinion confirms a prior order reversing the trial court and ordering the election to be vacated and set aside. On October 31, 1983, we heard oral argument in this case, and because of the time constraints in the preparation of voting machines and absentee ballots for the general election scheduled to be held on November 8, 1983, we issued an order with opinion to follow.

2. The back of the Hilary sample ballot had a photograph of Hilary and veteran former state representative Stanley J. Fudro and words of endorsement subscribed by him. It is customary for official DFL sample ballots to contain similar photographs and words of endorsement by party leaders.

# VOTE

## OFFICIAL SAMPLE BALLOT

**Vote for these DFL'ers September 13:**

For Alderman
**SANDRA HILARY**

FOR ALDERMAN

| X | **SANDRA HILARY** |

FOR PARK BOARD AT LARGE

| X | **NANCY L. ANDERSON** |

Prepared and Paid by Neighbors for Sandra Hilary, Carol Watson, Treas., 2319 Dupont Ave. N., Mpls. 55411. Not to be construed as distributed by the Minn. DFL State Central Committee.

For

more information

call 529-3616

---

# VOTE

## OFFICIAL SAMPLE BALLOT

**Vote for these DFL'ers September 13:**

For Alderman
**SANDRA HILARY**

FOR ALDERMAN

| X | **SANDRA HILARY** |

FOR PARK BOARD AT LARGE

| X | **NANCY L. ANDERSON** |

Prepared and Paid by Neighbors for Sandra Hilary, Carol Watson, Treas., 2319 Dupont Ave. N., Mpls. 55411. Not to be construed as distributed by the Minn. DFL State Central Committee.

For

more information

call 529-3616

During the same period of time that Hilary was distributing her sample ballot, the "DFL Endorsed Sample Ballot" supporting the endorsed candidates—Daugherty for alderman and Nancy Anderson for park board at large—was distributed in the Third Ward. The DFL ballot was designed, as the DFL sample ballots had been designed in prior years, with two identical lengthwise ballots, highlighted in yellow, containing pictures of the candidates and a short letter from party leaders on the back asking for voter support. Sample ballots are commonly issued by the DFL party in this or a very similar format. Traditionally, the DFL ballot was entitled "Official DFL Sample Ballot," although the 1983 ballot did not use the word "official."

The primary election, held on September 13, 1983, resulted in a victory for Hilary by a margin of 85 votes out of 3,855 cast.

Disposition of this election challenge requires answers to the following questions:

(1) Did Hilary's "Official Sample Ballot" falsely imply that she was endorsed by the DFL party in violation of Minn.Stat. § 210A.02 (1982)?

(2) Was there a knowing violation that was deliberate, serious, and material?

(3) Did the violation arise from any want of good faith?

■ 1. Whether there has been a violation of section 210A.02 by a false claim of party support or endorsement is a fact issue ascertainable from the documentary evidence before us. Two recent cases provide the framework for analysis. In *Schmitt v. McLaughlin*, 275 N.W.2d 587 (Minn.1979), we held that the use of the letters "DFL" in the campaign literature of an individual running for a non-party designated office "would imply to the average voter that contestee had the endorsement or, at the very least, the support of the DFL party." *Id.* at 591. We noted, however, that candidates have a right to inform voters of their party affiliation "by use of such words as 'member of' or 'affiliated with' in conjunction with the initials 'DFL.'" *Id.* In *Matter of Ryan*, 303 N.W.2d 462 (Minn.1981), the contestee argued that the words designating his party office inserted between "DFL" and "Labor Endorsed" were words indicating party affiliation, but not party endorsement, satisfying the requirements of *Schmitt* that "DFL" be used only with modifying language. We agreed with the trial court's analysis that the words "most reasonably read as an appositive rather than a modifier," and held that "[t]o meet the test established in *Schmitt*, it follows that the modifying language should be either synonymous with or a paraphrase of the approved words." *Id.* at 466.

■ Hilary argues that her sample ballot satisfies the requirements of *Schmitt* and *Ryan* by using the word "DFL'ers," a paraphrase of the words "member of DFL." We conclude, however, that the words may not be construed in isolation and should be read in the context of the document as a whole. In prominent lettering at the top of the Hilary ballot were the words "Official Sample Ballot," strikingly similar to the traditional title of the DFL sample ballot. The title was immediately followed by the phrase "Vote for these DFL'ers." Hilary included in her ballot a vote for Nancy Anderson, who, in addition to Daugherty, was the only DFL endorsed candidate for the Third Ward election. The language "Official Sample Ballot—Vote for these DFL'ers" in the context of the document implied that the word "official" referred to the DFL party or unit thereof.[3] We concur in the finding of the trial court that the Hilary sample ballot, taken as a whole, "was a thinly disguised attempt to clothe the sample ballot with a status not customarily afforded mere cam-

---

**3.** We note that a disclaimer at the bottom of the ballot stated: "Not to be construed as distributed by the Minn. DFL State Central Committee." This disclaimer was not sufficient to offset the strong implication of party support from the language "Official Sample Ballot—Vote for these DFL'ers." The disclaimer is ambiguous, in any event, because it only refers to the distribution of the ballot and makes no mention of the DFL City Central Committee, distributor of the official DFL sample ballot.

paign literature and to directly imply that the document was the DFL sample ballot, thus indirectly and falsely implying contestee was the endorsed candidate for alderman in the Third Ward."

█ 2. A candidate violates section 210A.02 "knowingly," as we said in *Ryan*, "if he knew that his literature falsely claimed or implied that he had party support or endorsement." 303 N.W.2d at 467. Hilary asserts that she and her campaign workers did not know that the sample ballot falsely implied party support. She states that her campaign workers referred to the 1982 Minnesota Campaign Manual published by the Secretary of State. That manual, however, is nothing more than a reprint of the Fair Campaign Practices Act with minimal summary and annotation. It did not cite the *Schmitt* or *Ryan* cases. Hilary's campaign manager, Lauren Maker, an attorney, admitted that she was vaguely aware of the *Ryan* case, but chose to rely solely on the manual without reviewing the most recent judicial applications of the statute. Hilary used, as a model, a sample ballot distributed by a 1977 aldermanic candidate in the Sixth Ward, which was approved by an unidentified county attorney. The 1977 ballot was prepared prior to both *Schmitt* and *Ryan* and was never challenged. Finally, Hilary reviewed the 1982 Official DFL Sample Ballot in an attempt to create "visual dissimilarities" between her ballot and the traditional DFL ballot. We can only gather from this testimony that she consciously undertook to derive as much benefit as possible from the voter's familiarity with party sample ballots, short of an outright claim of endorsement. Having consciously taken the risk that her interpretation of the bounds of the law was not correct, Hilary cannot now claim that she acted without knowledge when we draw the bounds of the law differently.

█ Clearly, under *Schmitt*, Hilary's violation was deliberate, serious, and material within the meaning of section 209.02, subd. 1. Hilary testified that she used the sample ballot because it was a common campaign technique used to influence voters; thus the violation was deliberate. *See* 275 N.W.2d at 591. The distribution of 13,000 copies in one ward of Minneapolis is a serious, and not trivial, violation. *See id.* Finally, as we held in both *Ryan* and *Schmitt*, a violation of section 210A.02 is inherently material. *See* 303 N.W.2d at 467; 275 N.W.2d at 591.

█ The trial court properly found that the violation was deliberate, serious, and material but added an irrelevant finding that the violation was "not material to the ultimate outcome of the election." The contestant is not required to affirmatively show an effect on the outcome of the election. The statute makes no such requirement, and, indeed, to place such an impossible burden of proof on contestants would effectively thwart the enforcement of the Fair Campaign Practices Act.

█ 3. We are left with a definite and firm conviction that the trial court was erroneous in its conclusion that the violation did not arise from any want of good faith. *See In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976). The documentary evidence before us renders the oral testimony of Hilary and her coworkers, that they acted in good faith, extremely doubtful. As noted, the similarity of the Hilary sample ballot to the DFL sample ballot, together with the use of the word "official" followed by the phrase "Vote for these DFL'ers," implied DFL party endorsement. There is no credible reason Hilary can suggest for the particular design of her ballot, except to imply DFL party support or endorsement. It is not without significance that Hilary was endorsed by Americans for Democratic Action, the Hennepin County Women's Political Caucus, and the Farmer-Labor Association but chose not to pursue the distribution of a sample ballot from one of these organizations. At the oral argument before this court, Hilary's attorney admitted that the reason for the use of the word "official" was "as an advertising technique to direct the reader's attention to the docu-

ment" and "to imply to the reader that it is an important document that they should take a look at." This admission identifies the very vice of the Hilary sample ballot, that "official" was a consciously chosen word that would attract the voter's attention because of its association with the traditional DFL sample ballot.

Our decisions in *Schmitt* and *Ryan* demonstrated our great reluctance to set aside the voter's decision in an election. The Fair Campaign Practices Act, however, is a considered effort to promote informed voting so essential in a free society. There is ample breathing room for fullest free speech in an election without permitting serious, deliberate, and material misinformation to voting citizens. Whatever may have been our misgivings in *Schmitt* and *Ryan*, we gave ample warning to future candidates in these words:

> After today's opinion, however, candidates who seek elected office should understand more clearly the limits of section 210A.02. Accordingly, candidates will have a most difficult time claiming good faith under section 210A.38 if violations similar to those presently under consideration occur hereafter.

*Ryan*, 303 N.W.2d at 468.

Because we find that the campaign violation in this case resulted from a want of good faith, we reverse and set aside and nullify the September 13, 1983, DFL primary election for Third Ward alderman for the City of Minneapolis.*

Reversed.

Election vacated and set aside.

WAHL, Justice (dissenting).

I respectfully dissent. In the first place it is not clear to me on the record before this court, including the documentary evidence, that the contestant has proved by a fair preponderance of the evidence that the Hilary sample ballot contains a false claim implying that Hilary had the support or endorsement of the DFL Party in violation of Minn.Stat. § 210A.02 (1982). The question is a close one. The sample ballot is similar in style and format to the official DFL Sample Ballot distributed in the Third Ward in other years. It is labeled OFFICIAL SAMPLE/BALLOT but is identical to the "OFFICIAL SAMPLE BALLOT" which was distributed by Jackie Slater, an unendorsed candidate in the Sixth Ward aldermanic primary election in 1977, without complaint and allegedly with approval of an unidentified county attorney. It identifies Hilary and Anderson as DFL'ers. Hilary is a DFL'er, a term which the district court determined could reasonably be interpreted as meaning member of the DFL Party, and has a right to identify herself as such. *Schmitt v. McLaughlin*, 275 N.W.2d 587 (Minn.1979). She also has a right to use a sample ballot. As the district court recognized, no major political party or other organization has an exclusive monopoly on use of sample ballots, particular colors, style or format of campaign literature. On the other hand, no candidate has the right, under our Fair Campaign Practices Act, to imply an endorsement he or she does not have. Had this sample ballot been labeled HILARY SAMPLE BALLOT the question would not even be close. As it is, the ballot on its face clearly sets out for the voters of the Third Ward the fact that it is prepared and paid for by Hilary's neighbors and is not distributed by the Minnesota DFL State Central Committee. This is not the disclaimer of one who wants the voters to believe that she has the DFL endorsement nor is it a disclaimer which the politically knowledgeable and intelligent electorate of the Third Ward would have ignored or misconstrued.[1] Therefore, though the sample ballot was intentionally

---

* A new DFL primary election was held in the Third Ward on December 6, 1983. In an unusually heavy turnout of voters, Sandra Hilary again prevailed, receiving 2,699 votes against 2,561 votes for Patrick Daugherty. The margin of difference in each election was slightly more than 2%.

1. It is to be noted that the voters of the Third Ward were the recipients not only of the Hilary OFFICIAL SAMPLE BALLOT but of *two* official DFL sample ballots as well, one mailed to each household, the other hand-delivered to each household.

prepared and distributed and, in if violation of § 210A.02, constituted a deliberate, serious and material violation, I do not find that it contains or implies a false claim of DFL endorsement which the candidate did not have.

Furthermore, under the standard of review of this court, the conclusion of the district court that the contestant failed to prove by a fair preponderance of the evidence that the violation found by the district court occurred by reason of lack of good faith is not clearly erroneous. In *Matter of Ryan*, 303 N.W.2d 462 (Minn. 1981) this court reached out without any specific analysis of the record and reversed the district court's decision that the appellant in that case had acted in bad faith. Now, in this case, with a record replete with evidence of good faith, we reverse the district court's finding of good faith.

The evidence of good faith before the district court came, not only from documents which we can examine equally well, *see In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976), but also from witnesses whose credibility was for the trier of fact. The district court, in considering the question of good faith, noted the following evidence, which we, too, have ascertained in the record:

> During the course of the campaign ... the campaign manager obtained the most current pamphlet available from the Secretary of State's office regarding elections. The booklet failed to contain annotations regarding either *Schmitt* or *Ryan*. Notwithstanding, [the campaign manager] did admit some knowledge of the cases but ultimately submitted the matter to 'their attorney' for evaluation and approval before printing the sample ballot. There was direct testimony that a sample ballot was campaign literature that had been used in other campaigns, namely, the Jackie Slater aldermanic primary contest, without complaint and allegedly with approval of an unidentified county attorney. The initials DFL had been modified with an apostrophe fol-

lowed by "ers." Although perhaps not without doubt, the modification grammatically would indicate member of the DFL. The disclaimer and/or identification of the organization responsible for the literature was printed in 12-point type, substantially larger type than is customarily used on campaign literature or was used on the DFL Sample Ballot in this primary contest. Although the reference to the DFL Central Committee might be somewhat obscure to the average voter, the organization responsible for the DFL Sample Ballot was in fact the DFL Central Committee. Permission was obtained from Nancy L. Anderson, endorsed candidate for Park Board at Large, to add her name to the sample ballot. Only Hilary was highlighted on the sample ballot in yellow. (Memorandum of the district court, pp. 8–9).

In light of the above evidence, the determination by the district court that any violation by Hilary was occasioned by accidental miscalculation and not by reason of any lack of good faith is not clearly erroneous. I would affirm.

KELLEY, Justice (dissenting).

I join in the dissent of Justice WAHL.

COYNE, Justice (dissenting).

I join in the dissent of Justice WAHL.