**John DERUS, Contestant,**

v.

**Linda HIGGINS, Patrick H. O'Connor,
County Auditor, Hennepin
County, Contestees,**

v.

**COWLES MEDIA COMPANY, d/b/a The
Star–Tribune, An Indispensable
Party.**

No. C8–96–1993.

Supreme Court of Minnesota.

Oct. 9, 1996.

Rehearing Denied Oct. 30, 1996.

Best & Flanagan, P.L.L.P., Brian F. Rice, Elliot C. Rothenberg, Minneapolis, for Contestant John Derus.

Weinblatt & Associates, Alan W. Weinblatt, Lawrence E. Meuwissen, St. Paul, for Contestee, Linda Higgins.

Hennepin County Attorney's Office, Patrick Diamond, Minneapolis, for Contestees, Patrick O'Connor, County Auditor, Hennepin County.

Faegre & Benson L.L.P., John D. French, John P. Borger, Elizabeth L. Taylor, Minneapolis, for Indispensable Party, Cowles Media Company, d/b/a The Star–Tribune.

## OPINION

KEITH, Chief Justice and COYNE, Justice.

John Derus, an unsuccessful candidate in the September 10, 1996 primary election for nomination as the Democratic–Farmer–Labor party's candidate in the general election to the Minnesota Senate, District 58, has filed a verified notice of an election contest in Hennepin County District Court. *See* Minn. Stat. § 209.02 (1994). We dismiss the notice of contest.

Summarily, Derus asserts that the election was tainted when the Minneapolis Star–Tribune newspaper erroneously printed his photograph under a headline concerning charity fraud. More specifically, Derus alleges that the Star–Tribune has a history of criticizing him and that the placement of his widely-recognized picture under the "charity fraud" headline on the day of the primary election constituted "a false and misleading article creating the impression that Derus was somehow connected with dishonest conduct." Derus further alleges that the actions of the Star–Tribune violated Minnesota election law and the Minnesota Constitution by misrepresenting him to the public and by engaging in a fraud which obstructed or prevented the free exercise of the right to vote by voters in District 58. Significantly, while Derus does not allege that Linda Higgins violated any state election law or that she bears any

personal responsibility for the article, he asserts that she, the successful candidate and contestee herein, should be denied the DFL nomination and a special primary election should be held.

Derus seeks the following remedies for the claimed violations: (1) the invalidation and revocation of the certificate of nomination issued to Higgins; (2) an order of the court directing that no names appear on the general election ballot for District 58 until this contest is completed; (3) an order of the court directing that a special primary election be held either before the November 5, 1996 general election or, if that is not possible or practical, that the general election for District 58 be delayed until after a called special primary election is held; (4) reimbursement by the Star–Tribune of all costs and attorney fees incurred by the candidates and of all costs incurred by Hennepin County in conducting additional elections; and (5) other appropriate relief.[1]

Upon the filing of the notice of contest, the district court administrator submitted the notice to the Chief Justice of this court in accordance with Minn.Stat. § 209.10, subd. 1, for his provision to the parties of a list of all district judges of the state to allow those parties to exercise alternative strikes until but one named judge remained. Minn.Stat. § 209.10, subd. 2. By order filed on October 1, 1996[2] we stayed district court proceedings pending our consideration of the motion to dismiss which Linda Higgins had filed in the district court. We acknowledged in that order and confirm here today the need for immediate and prompt consideration of the motion because implicated by these proceedings is the general election to be held on November 5, 1996.

In this most unusual circumstance,[3] we exercise our inherent authority to consider the threshold question of whether the document denominated as a "notice of contest" presents a justiciable claim for relief under the Minnesota election laws.[4] In our view,

---

**1.** As this court noted in *Phillips v. Ericson*, 248 Minn. 452, 457, 80 N.W.2d 513, 517 (1957), "The authority of courts to entertain election contests is purely statutory * * *." Similarly, the remedies for claimed violations of the election laws are only those provided by statute. The only remedies provided by the Fair Campaign Practices Act are conviction of the violator of a misdemeanor or gross misdemeanor, or forfeiture of the nomination or office in certain circumstances when the candidate has been found guilty of violation of the Act or the violation was committed by another person with the knowledge, consent, or connivance of the candidate. Even *a candidate* held responsible for violation of the Act does not forfeit the nomination or office if the offense was trivial or the act or omission arose from accidental miscalculation or other reasonable cause, provided there was no want of good faith. Minn.Stat. § 211B.17, subd. 2. The Act does not address penalties which could be imposed upon a noncandidate other than criminal conviction. Nothing in the Act, however, authorizes the judiciary to delete the names of all candidates from the general election for District 58 pending disposition of this matter; nothing in the statute authorizes an order directing a special primary election or delaying the general election for District 58; and nothing in the statute would permit imposition of an enforceable order imposing on the Minneapolis Star–Tribune reimbursement of the costs and attorney fees incurred by the candidates and of all costs incurred by Hennepin County in conducting additional elections. Indeed, were the courts to afford the unprecedented relief Derus seeks, it would, in effect, have usurped the very function

that we have long acknowledged is that of the legislature alone—the prerogative that it determine the qualifications of its members by deciding, only with regard to a *primary* election, that Higgins is not entitled to the certificate of nomination. *See* Minn. Const. art. IV, § 6.

**2.** We directed the parties to file simultaneous memoranda addressing designated issues to facilitate our expeditious and immediate consideration of the merits of Higgins' motion to dismiss.

**3.** The question of whether conduct of a third party with no connection to a legislative candidate may serve as a basis for invalidating an election is an issue of first impression in this state.

**4.** Insofar as practicable, the Rules of Civil Procedure govern election contests. Minn.Stat. § 209.065; *see also Phillips*, 248 Minn. at 476, 80 N.W.2d at 528–29 ("To the extent that the election law establishes procedure which may be adopted it should be followed. Where there is no law, the general rules applicable to trial of civil cases should be followed."). Higgins' motion to dismiss is proper under Minn.R.Civ.P. 12.02(a) and (e) (lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted). *Cf. Moulton v. Newton*, 274 Minn. 545, 550, 144 N.W.2d 706, 710 (1966) (referring to a lack of deliberate, serious, and material violations of election law as a jurisdictional deficiency).

only if it does will the Chief Justice perform the ministerial task of providing the list of judges to the parties as contemplated by Minn.Stat. § 209.10, subd. 2. Alternatively, if it does not, the interests of the citizens of the State of Minnesota and the contestee compel a dismissal of this action without further proceedings. To resolve that threshold question, we are called upon to examine the substance of Derus' allegations, not just the form of the notice.

Derus claims that an activity of a third party, the Star–Tribune, violates the Fair Campaign Practices Act's prohibitions against undue influence and fraud in an election. Minn.Stat. § 211B.07 provides as follows:

> A person may not directly or indirectly use or threaten * * * undue influence * * * against an individual to compel the individual to vote for or against a candidate * * *. Abduction, duress, or fraud may not be used to obstruct or prevent the free exercise of the right to vote of a voter at a primary * * *.

Nevertheless, he invokes none of the remedies provided by the Fair Campaign Practices Act for an alleged violation of its multiple provisions. The Act imposes criminal penalties in the form of a gross misdemeanor or misdemeanor conviction upon its violators, without regard for their identity—that is, whether the alleged violator is a candidate, a campaign worker or an unrelated third-party. *See, e.g.,* Minn.Stat. §§ 211B.07, .16 and .19. A candidate who violates a provision of the Act may face forfeiture of nomination, in addition to the criminal penalties, under circumstances defined in the statute. *See* Minn.Stat. § 211B.17. Here, in the absence of an allegation of wrongdoing by the candidate Higgins or by one acting with her authority or consent, the forfeiture provision is inapplicable and we decline to judicially expand its language to afford a remedy for a claimed violation by a noncandidate.

Therefore, although Derus claims an entitlement to maintain an "election contest" on the basis of a "deliberate, serious, and material violations of the Minnesota election law," Minn.Stat. § 209.02, to the extent the allegations of wrongdoing with regard to the conduct of this third party only implicate the Act, the remedies provided therein are exclusive. We therefore hold that while the contestant has attempted to avail himself of broad remedial relief under the election laws by denominating this proceeding as an election contest, even accepting as true for those purposes the allegations of wrongdoing included in the "notice," no justiciable claim for relief thereunder has been asserted. The purported notice of contest must be dismissed.[5] Accordingly, as there exists no "election contest" within the statutory structure, it follows that the Chief Justice is not required to provide the list contemplated by Minn.Stat. § 209.10, subd. 2. Holding otherwise would disrupt the settled understanding of the Minnesota election law. Thirty years ago, this court held that third-party violations of election law cannot provide the basis for contesting a judicial election. *Munnell v. Rowlette,* 275 Minn. 92, 100, 145 N.W.2d 531, 536 (1966). That *Munnell* stated a general rule is made clear by our statements in previous cases. *See, e.g., Phillips,* 248 Minn. at 466–68, 80 N.W.2d at 520 (recognizing that contests based on violations of the Corrupt Practices Act, predecessor provisions to the Fair Campaign Practices Act, are limited to acts of the candidate and those for whom he or she is "responsible," quoting *Johnson v. DuBois,* 208 Minn. 557, 565, 294 N.W. 839, 842 (1940)); *Hawley v. Wallace,* 137 Minn. 183, 185, 163 N.W. 127, 128 (1917) ("The statute does not intend to punish one with the loss of an office to which he is elected because of statements circulated by his friends in which he does not participate."). Nothing in the current version of the election laws indicates that the rule should be different in this case.

Moreover, our precedent indicates that the Fair Campaign Practices Act forfeiture pro-

---

5. While Justice Tomljanovich argues in her dissent that our dismissal of the notice violates this contestant's statutory right to a determination of the facts at the district court, our decision accepts for its purposes that the allegations contained in the notice are true and that they nevertheless would not support Derus' claims to relief, which are not available under the statute. Under these circumstances, the district court's fact-finding responsibilities are not invoked.

visions apply to election contests based on a successful candidate's violation of that Act. *See In re Contest of Election in DFL Primary Held on Tuesday, Sept. 13, 1983,* 344 N.W.2d 826, 831–32 (Minn.1984) (applying the forfeiture restrictions in chapter 210A, chapter 211B's predecessor); *id.* at 833 (Wahl, J., dissenting) (same); *In re Election of Ryan,* 303 N.W.2d 462, 467–68 (Minn.1981) (same); *Schmitt v. McLaughlin,* 275 N.W.2d 587, 591 (Minn.1979)(same). Again, the Act's forfeiture provisions require candidate involvement in misconduct before forfeiture is proper. Minn.Stat. § 211B.17. We conclude that the legislature must not have intended for election contests to be based on independent misconduct of third parties. If the legislature wishes to change the common and long-standing construction of the election contests statute, it clearly has the authority to do so.

The legislature has crafted a statutory structure for the orderly conduct of elections and for remediation in the event of a violation of those laws. *E.g., Phillips,* 248 Minn. at 476, 80 N.W.2d at 529–29. "It is properly the function of the legislature and not that of the courts to change the obligations imposed upon one who desires to commence an election contest." *Powell v. Johnson,* 304 Minn. 534, 536, 231 N.W.2d 926, 927 (1975). We therefore commend to the legislature an inquiry into whether, under the circumstances of record, it should design a statutory remedy not now provided for conduct such as alleged here and submit this decision to it for whatever purposes it may deem appropriate. It is necessary to comment that we have long grappled with the question of what role the judiciary plays or should play in the legislature's own constitutionally-mandated inquiry into the qualification of its membership. We

have stated that the constitutionality of the role assigned the judicial branch with regard to legislative election contests by Minn.Stat. c. 209 is open to question, but because we are of the opinion that the document here denominated a "notice of contest" does not present a justiciable claim for relief under the Minnesota election laws and that that role is not implicated in these proceedings, we simply reiterate Chief Justice Sheran's statement in *Scheibel v. Pavlak,* 282 N.W.2d 843, 853 (Minn.1979):

> We submit [this] opinion to [the Minnesota Senate] with the understanding that whether the Supreme Court should henceforth decline jurisdiction in legislative election contests covered by Minn.Stat. § 209.09 in light of Article IV, Section 6 and Article III, Section 1 of the Minnesota Constitution is a question reserved for future decision.[6]

It should be understood that we are concerned here with the statutorily established procedures for judicial involvement in elections, rather than with the ultimate qualification of a member—a matter reserved for the legislature. Although we hold that these proceedings fall outside the statutory election provisions now existing, this decision does not preclude Derus from seeking a remedy from the legislature itself, for it is the legislature that is the "judge of the * * * eligibility of its own members." Minn. Const. art. 4, § 6.

Notice of contest dismissed.

ANDERSON and STRINGER, JJ., took no part in the consideration or decision of this case.

---

**6.** We also reserve the issues of whether the established constitutional distinction between primary and general legislative elections may affect the reference of certain procedures to the judiciary by the legislature under *Scheibel,* 282 N.W.2d at 849, n. 15 (distinguishing *Moe v. Alsop,* 288 Minn. 323, 180 N.W.2d 255 (1970) because it involved a candidate's placement on a *primary* ballot, not whether an elected state legislator should be removed). *Cf. Touhey v. Donovan,* 259 Minn. 63, 67, 105 N.W.2d 849, 851 (1960) ("Since the adoption of our primary election law, we have consistently held that the primary is not an election in the sense that the word is used in our constitution."); *State ex rel. 25 Voters v. Selvig,* 170 Minn. 406, 407, 212 N.W. 604, 604 (1927) (refusing to adjudicate a contested general election for Congress on the basis of alleged Corrupt Practices Act violations—"Such primary elections are not of the character contemplated or intended by the term election as used in the Constitution of the United States or the Constitution of this state * * *. They are merely a method of nominating candidates for office to be filled by the voters at the election intended by the Constitution."). (Citations omitted).

PAGE, Justice, concurring specially.

While I concur in the result reached by the court in this matter, I strongly disagree with the notion that this primary election contest should be either dismissed or reviewed on its merits. My concern is not with the merit or lack of merit to this dispute. My concern is the integrity of the judicial process. The position taken by Chief Justice Keith and Justice Coyne reaches the correct result, but for the wrong reasons. The position taken by Justices Gardebring and Tomljanovich reaches the wrong result for the wrong reasons. If the judicial branch of our state government has the authority to resolve this primary election contest on its merits, we should follow the statute in doing so. However, before a court may reach the merits of a dispute, it must have authority under the constitution.[1] We do not have such authority here. To the extent that Minn.Stat. § 209.10 purports to grant such authority to the judicial branch of government, it is unconstitutional.

Justice Kelly's well-reasoned analysis in his dissenting opinion in *Scheibel v. Pavlak,* 282 N.W.2d 843 (Minn.1979), clearly sets forth this court's lack of authority under the constitution to resolve the issues presented by a primary election contest. What Justice Kelly said is this:

> I agree that there is no question of the legislature's final authority in this matter: it is an absolute grant of constitutional power which may not be delegated to or shared with the courts. It follows as pointed out by the majority opinion that we have no jurisdiction to issue a final and binding decision in this matter and any opinion rendered could only be advisory in nature.

> As I interpret our constitution there is no duty imposed on this court to render any type of decision in this matter whether it be advisory or otherwise. I recognize that his [sic] court has as a matter of comity in some instances adhered to legislative enactments where it seems appropriate to do so. In this case it does not seem appropriate. Our constitution (Minn. Const. art. IV, § 6) provides:

> > "[That each house of the legislature] * * [*] shall be the judge of the * * * eligibility of its own members."

Then, to aid the legislature to carry out its judicial role, the constitution authorizes that body to:

> "[P]rescribe by law the manner for taking evidence in cases of contested seats in either house."

This language does not expressly or impliedly permit the legislature to obligate this court to make decisions in election contests where each house of the legislature is given the power of determining the eligibility of its members. It only goes so far as to permit the legislature to prescribe the manner for "taking evidence." Thus, the judiciary should not be required by the legislature to do more than take evidence. This court might be called upon to review the process involved in the taking of evidence.

An additional reason for my thinking that it is inappropriate for this court to render any type of decision in any manner affirming or reversing the court below is that we would be intruding on the powers and duties of another branch of the government—the legislature.

I also have some misgivings about the constitutional propriety of the trial court making findings of fact and conclusions of law but because it is a one-[person] court, it seems less intrusive. That court perhaps should have done no more than take the evidence, state the issues, and summarize the testimony.

*Id.* at 865–66.

Even the majority in *Scheibel* acknowledged the constitutional problems created by the court's involvement in legislative election contest disputes. The court stated:

> The Supreme Court of Minnesota * * * cannot and should not act as an agent for the Legislature. Its function is to act independently and with finality. In a case

---

1. While the parties did not raise the issue of jurisdiction, the court may always raise the issue on its own motion. *Izaak Walton League of Am.*

*Endowment, Inc. v. State Dep't of Natural Resources,* 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977).

as this, we cannot act independently and with finality. To attempt to do so would be a clear violation of the constitutional directive that the House and Senate be the judges of the qualifications of their members.[2]

*Id.* at 851. The judicial branch of our state government cannot act with independence and finality in this case. While we could issue an advisory opinion, we should not. To do so we would have to act as an agent for the Legislature. Therefore, Mr. Derus' primary election contest must be dismissed.

In his brief to this court, Mr. Derus argues that it is the Legislature, and the Legislature alone, which has the constitutional authority to resolve the issues raised by a primary election contest. His argument is correct. Mr. Derus' primary election contest must be taken directly to the Legislature.

TOMLJANOVICH, Justice, dissenting.

Today's unprecedented and premature dismissal of John Derus' primary-election contest violates not only the contestant's statutory right to a determination of the facts at the district court, *see* Minn.Stat. § 209.10 (1994), it also violates the legislature's constitutionally mandated authority to determine the "eligibility of its own members," Minn. Const. art. IV, § 6, and this court's holding that it will not and should not act as the legislature's agent by rendering advisory opinions in legislative-election contests, *Scheibel v. Pavlak*, 282 N.W.2d 843, 850–51 (Minn.1979); *see also* Minn. Const. art. III, § 1 (providing for separation of powers).

As this court previously held, election contests under the laws of this state are exclusive statutory proceedings. *Hancock v. Lewis*, 265 Minn. 519, 522, 122 N.W.2d 592, 594 (1963) (citing *Christenson v. Allen*, 264 Minn. 395, 398, 119 N.W.2d 35, 38 (1963)). "It is elementary that both the right to contest an election and the authority of courts to hear and determine an election contest are purely statutory; and, absent statutory compliance,

courts are powerless to entertain such proceedings." *Christenson*, 119 N.W.2d at 38. Derus timely filed an election contest under Minn.Stat. chapter 209, which requires in part that such claims originate in the district court. Minn.Stat. § 209.10, subd. 3 (1994). The statute provides for this court's involvement in two specific instances. First, to submit a list of district-court judges to the parties. Minn.Stat. § 209.10, subd. 2 (1994). And second, to hear appeals of district-court decisions. Minn.Stat. § 209.10, subd. 4 (1994). Although this court maintains supervisory powers, the assumption of such power in this case is particularly indefensible given that this is an election contest. As this court stated in *Scheibel*, the supreme court's jurisdiction upon appeal of legislative-election contests "would be a clear violation of the constitutional directive that the House and Senate be the judges of the qualification of their members." *Scheibel*, 282 N.W.2d at 851; *see also Scheibel*, 282 N.W.2d at 865 (Kelly, J., dissenting) (stating this court has no jurisdiction in legislative-election contests). If this court's jurisdiction upon appeal is unconstitutional, as *Scheibel* maintains, this court's premature assumption of jurisdiction to dismiss a case before the district court has performed its statutorily mandated fact-finding function is, *a fortiori*, unconstitutional.

The better result is to follow the directives of both Minn.Stat. § 209.10 and *Scheibel* and submit a list of district-court judges to the parties for the purpose of the election contest. Justice Page asserts that the judiciary's involvement, even at the district-court level, violates separation of powers. And he may be right. *See* Minn. Const. art. III, § 1 (stating that none of the three governmental branches "shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution"). As Justice Kelly asserted in *Scheibel*, the district court should be allowed to do no more than "take the evidence, state the issues, and summarize the testimo-

---

**2.** In spite of its constitutional concerns, the *Scheibel* court issued an advisory opinion because it had "heard the case and spent a great deal of time studying and deliberating on its merits before becoming acutely aware of the institutional considerations counselling dismissal." *Id.* at 851. While I do not believe that that is a sound basis for issuing an advisory opinion, I note that even if it were, it is not a consideration in this case.

ny." *Scheibel,* 282 N.W.2d at 866 (Kelly, J., dissenting). But Justice Page's position goes too far at this time. A decision that precludes even the district court's involvement in a legislative-election contest would require not only that we strike down Minn.Stat. § 209.10, subds. 1–4, but also that we overrule *Scheibel. See Scheibel,* 282 N.W.2d at 850 (stating that separation-of-powers limitations in election contests do not apply to the district court). Given that none of the three parties argued that the statute is unconstitutional as applied to the district court, a dismissal on those grounds would be premature and overreaching.

Although three of the five justices ruled that John Derus' election contest be dismissed, only Chief Justice Keith and Justice Coyne dismissed the contest on its merits. I, on the other hand, am joined by Justice Page and Justice Gardebring in holding that this court has no jurisdiction to decide whether the election contest states a claim upon which relief can be granted.

GARDEBRING, Justice, dissenting.

I respectfully dissent from the view expressed by Chief Justice Keith and Justice Coyne on both procedural and substantive grounds. By its action today, the majority precludes an "election contest" based on the actions of a third party and leaves no path for an aggrieved candidate to get his or her legitimate election dispute before the legislature. The majority decision is inconsistent with past precedent, contrary to statutory requirements and outside the constitutional grant of authority to the judicial branch. It is a direct affront to the separation of powers spelled out by the writers of the Minnesota Constitution.

Article IV, Section 6 of the Minnesota Constitution unequivocally provides that "[t]he Legislature shall be the judge of the * * * eligibility of its own members" and provides further that the legislature may "prescribe by law the manner for taking evidence in cases of contested seats in either house." Through the adoption of Minn.Stat. § 209.10 (1994), the legislature has done just that, by establishing an orderly procedure, which relies on the assistance of the judicial branch, to allow legislative election contests to come before it in a systematic way. In subdivisions 2, 3 and 4 of Minn.Stat. § 209.10 (1994), the legislature has carefully prescribed the limits of the judiciary's task by spelling out a procedure for the selection of a trial judge and by describing the role of that judge and the mechanism for appeal of the matter to this court. The statute clearly directs that the trial judge "shall decide the contest" and "shall transmit the findings, conclusions, orders, and records of the proceeding to the chief clerk of the house of representatives or the secretary of the senate, as appropriate." Minn.Stat. § 209.10, subd. 3 (1994). The initial role of the supreme court is purely ministerial, requiring only that we submit to the parties a list of district court judges from whom they may choose. Nothing in the statute authorizes the supreme court to dismiss a challenge to the eligibility of a legislative candidate, particularly without even the benefit of fact-finding and legal analysis done in virtually all other judicial matters by a trial court. By its decision to prematurely dismiss the eligibility challenge, the majority has crossed into the constitutional territory of the legislature.

Furthermore, the reasoning of the majority in support of its dismissal decision is, at best, unpersuasive. The matter raised in the Derus "Notice of Contest" is clearly an "election contest." Both common sense and a careful statutory analysis support this view. If a dispute about the fairness of an election, seeking a new election, is not an "election contest," what would be? The statutory scheme set out by the legislature clearly makes it so. The Fair Campaign Practices Act (FCPA) is one of several chapters "known as the Minnesota election law." Minn.Stat. § 200.01 (1994). A candidate may seek invalidation of a nomination based on "the grounds of deliberate, serious, and material violations of the Minnesota election law," which includes the FCPA. Minn.Stat. § 209.02, subd. 1 (1994).

The specific provision of the FCPA alleged to have been violated, Minn.Stat. § 211B.07 (1994), is a prohibition on certain actions by "a person;" by its terms it is not limited to actions by the candidate. A "third-party,"

such as the *Star Tribune*, is clearly within its reach. Thus, a violation of the FCPA by a "third party" may provide a basis for invalidation of the nomination if the violation is "deliberate, serious and material."[1] Further, analysis of the factual allegations in this case against the "deliberate, serious and material" standard, is just the kind of task that the trial court is called upon to do in the procedure spelled out by the legislature and rejected by the majority's decision.

Further, the majority's holding that the remedies provided in the FCPA are exclusive goes directly against the holdings of this court in *Saari v. Gleason*, 126 Minn. 378, 380, 148 N.W. 293, 294 (1914) and *Phillips v. Ericson*, 248 Minn. 452, 467–68, 80 N.W.2d 513, 524 (1957). *See also Bank v. Egan*, 240 Minn. 192, 60 N.W.2d 257 (1953) (allowing election contest for violation of the Corrupt Practices Act). In *Saari*, this court determined that the Corrupt Practices Act (the precursor to the FCPA) was intended to provide *two alternative remedies*, "one by criminal prosecution and conviction and a supplemental judgment of ouster, and the other by the more summary and expeditious means of an election contest." *Saari*, 126 Minn. at 381, 148 N.W. at 294. Our later decision in *Phillips* reiterated that a violation of the Corrupt Practices Act can be the basis for an election contest. *Phillips*, 248 Minn. at 468, 80 N.W.2d at 524.[2]

Finally, despite the remonstrances of the majority opinion to the contrary, neither the constitution nor Minn.Stat. § 209.10 (1994) provide any method for an aggrieved legislative candidate to get his or her election dispute before the proper house of the legislature, other than the one rejected by the majority today. Therefore, I conclude that the majority has improperly cut off the right of such a candidate to have the matter re-

solved in a constitutionally permissible manner by the legislature. This constitutional failure combined with the fundamental unfairness of this outcome requires me to dissent from the majority opinion. Like Justice Tomljanovich, I would follow the provisions of Minn.Stat. § 209.10, subd. 2 (1994) by submitting a list of district court judges to the parties.

---

1. On this issue, the majority depends on *Munnell v. Rowlette*, 275 Minn. 92, 145 N.W.2d 531 (1966) for its conclusion that "third-party violations of election law cannot provide the basis for contesting" an election. But *Munnell* is distinguishable. Although the court stated that none of the actions by the third party would be chargeable to the candidate, the case turned on the court's conclusion that the *candidate's* presence at the polling place did not interfere with the election. The opinion gives no indication that the plaintiff in *Munnell* based his claim on the acts of a third party alone. There appear to be no Minnesota cases dealing specifically with third-party wrongdoing alone.

2. While both *Saari* and *Phillips* dealt with violations of the Corrupt Practices Act by a successful candidate, nothing in their holdings suggests the issue of whether the remedy is exclusive turns on who violates the restrictions on campaign practices.